## SANDRA KONESKY *v.* POST ROAD ENTERTAINMENT ET AL.
### (AC 34617)

DiPentima, C. J., and Gruendel and Beach, Js.

Argued February 7—officially released July 16, 2013

*Jan C. Trendowski,* with whom was *Gregory A. Allen,* for the appellant (substitute defendant).

*John J. Kennedy, Jr.,* with whom were *Edward L. Walsh* and, on the brief, *Jennifer Antognini-O'Neill,* for the appellee (plaintiff).

BEACH, J. The substitute defendant Hula's New Haven, LLC,[1] appeals from the judgment of the trial court, rendered after a jury trial, awarding damages to the plaintiff, Sandra Konesky. The defendant claims that the trial court improperly construed and applied the mode of operation rule.[2] We agree and, accordingly, reverse the judgment of the trial court.

The following facts, which reasonably could have been found by the jury, are relevant to the resolution of this appeal. On the evening of January 11, 2008, the plaintiff and her husband, Stanley Konesky, attended an event organized by the Walter Camp Football Foundation at Hula Hank's Island Bar (Hula Hank's), a nightclub in New Haven owned and operated by the defendant. The plaintiff's husband was a former president of the foundation, which each year honors college football players. The honored players spend a long weekend in Connecticut and participate in a variety of activities, ranging from visits to children's hospitals to a black-tie dinner. The Friday evening event is typically a party at a nightclub, which is attended by the players, foundation members and officers, and members of the general public. For several years, including 2008, this event was held at Hula Hank's.

The Walter Camp event filled Hula Hank's nearly to its 650 person capacity. As was its practice at events of this scale, the defendant supplemented its three permanent bars by stationing several "beer tubs" at additional locations throughout the venue, where patrons

---

[1] Hula's New Haven, LLC, was substituted as the defendant in this action for the original named defendants, Post Road Entertainment and Club, LLC. We therefore refer in this opinion to Hula's New Haven, LLC, as the defendant.

[2] The defendant also claims that the court improperly allowed evidence of subsequent remedial measures. Because we reverse the judgment on the defendant's mode of operation claim, we need not reach this second claim.

could buy a bottle or can of beer. Large plastic tubs were filled with ice and beer and replenished as the beer sold out. Each tub was set up on top of a large speaker box. A server stood on top of the speaker box and handed beers to patrons below.

One of the beer tubs was positioned near a booth where the plaintiff and her husband had sat down shortly after arriving at Hula Hank's. Their booth was one step up from the club's wooden dance floor. After sitting at the booth for one-half hour or less, the plaintiff got up to use the restroom. After taking a couple of steps, she slipped and fell. The plaintiff immediately felt intense pain in her shoulder and foot, and could not get up off the floor by herself. She noticed that her pants were wet and saw water on the floor near the beer tub area, on top of the step. The plaintiff was taken by ambulance to Yale-New Haven Hospital, where she was diagnosed with a fractured shoulder and foot. She needed surgery to repair her fractured foot; her recovery required that she stay off her foot for eight to twelve weeks.

The plaintiff thereafter commenced this negligence action against the defendant,[3] alleging, among other things, that the step from the booth area to the dance floor was defective, that the defendant had caused the floor area where the plaintiff had fallen to be slippery and hazardous, and that the defendant's chosen method of selling beer from the ice filled tubs was an inherently hazardous means of serving drinks. Following a jury trial, the plaintiff was awarded a total of $292,500 in damages, which reflected a 10 percent reduction of the award for the plaintiff's comparative negligence. This appeal followed. Additional facts and procedural history will be set forth as necessary.

---

[3] See footnote 1 of this opinion.

## I

The plaintiff preliminarily asserts that the general verdict rule applies in this case. She argues that if either of the defendant's two claims on appeal fails, we must affirm the judgment. Specifically, the plaintiff contends that her one count complaint, which sounded in negligence, asserted two distinct legal theories of recovery: the first, relating to the allegedly defective step, based on traditional premises liability law, and the second, relating to the operation of the beer tubs, based, in part, on the "mode of operation" doctrine. Because interrogatories were not submitted to the jury distinguishing between these two purportedly distinct theories, the plaintiff claims that there is no way of discerning on which basis the jury found in her favor. We disagree with the assertion that the plaintiff's allegations established two separate legal bases for recovery for purposes of the general verdict rule.

"In a typical general verdict rule case, the record is silent regarding whether the jury verdict resulted from the issue that the appellant seeks to have adjudicated." *Curry* v. *Burns*, 225 Conn. 782, 790, 626 A.2d 719 (1993). "Under the general verdict rule, if a jury renders a general verdict for one party, and [the party raising a claim of error on appeal did not request] interrogatories, an appellate court will presume that the jury found every issue in favor of the prevailing party. . . . Thus, in a case in which the general verdict rule operates, if any ground for the verdict is proper, the verdict must stand; only if every ground is improper does the verdict fall." (Internal quotation marks omitted.) *Tetreault* v. *Eslick*, 271 Conn. 466, 471, 857 A.2d 888 (2004).

Even in a case with a single count complaint, the general verdict rule applies when "reliance is placed upon grounds of action . . . which are distinct, not because they involve specific sets of facts forming a

part of the transaction but in the essential basis of the right replied upon . . . ." (Internal quotation marks omitted.) *Curry* v. *Burns*, supra, 225 Conn. 794. Thus, as our Supreme Court noted in *Curry*, the general verdict rule would apply in a case in which a single count of a complaint alleged both wanton misconduct and negligence. Id. The applicability of the general verdict rule "does not depend on the niceties of pleading but on the distinctness and severability of the claims and defenses raised at trial." (Internal quotation marks omitted.) Id., 787.

The various specifications of negligent conduct alleged by the plaintiff in her complaint—including the two at issue on appeal—all sound in premises liability. See *Duncan* v. *Mill Management Co. of Greenwich, Inc.*, 308 Conn. 1, 3–5, 60 A.3d 222 (2013); *Fisher* v. *Big Y Foods, Inc.*, 298 Conn. 414, 419, 3 A.3d 919 (2010) (explaining that mode of operation rule provides "an exception to the notice requirement of traditional premises liability doctrine"); *Kelly* v. *Stop & Shop, Inc.*, 281 Conn. 768, 797, 918 A.2d 249 (2007) (*Zarella, J.,* concurring) ("the mode of operation rule . . . and traditional premises liability law require proof of essentially the same elements"). Thus, a plaintiff who attempts, as here, to prevail under either common-law premises liability principles or the mode of operation rule is seeking to vindicate the same "essential right"; *Curry* v. *Burns*, supra, 225 Conn. 794; even though she may allege somewhat different specifications of negligent conduct to advance each claim. See *Green* v. *H.N.S. Management Co.*, 91 Conn. App. 751, 756, 881 A.2d 1972 (2005) (general verdict rule "does not apply if a plaintiff submits to the jury several different specifications of negligent conduct in support of a single cause of action for negligence"), cert. denied, 277 Conn. 909, 894 A.2d 990 (2006).

The general verdict rule, then, does not apply and we are not precluded from reversing the judgment in favor of the plaintiff if we conclude that any ground on which the jury could have based its verdict was improper. See id., 757.

## II

We next address the defendant's claim that the court misconstrued the mode of operation rule. The defendant contends that the mode of operation doctrine was erroneously applied for two reasons: (1) the particular business operation at issue was not self-service in nature, and (2) the only mode of operation that the plaintiff identified as being peculiar and inherently hazardous was the service of bottles and cans of beer from ice filled tubs, which, the defendant argues, is not significantly different from other means of performing this essential nightclub function.

The following additional procedural history is relevant to the defendant's claim. The plaintiff alleged in her amended complaint that the defendant operated a "portable bar on the floor and step area in such a manner that it was foreseeable that the defendant's employees and patrons would spill or drop beverages, ice, water and drinks as they were working, dancing or congregating, thereby creating a dangerous condition in the immediate vicinity of the [portable] bar . . . ." The defendant filed a motion in limine to preclude the introduction of evidence related to the mode of operation theory of premises liability. The court heard arguments on the issue and denied the defendant's motion.[4] The court agreed with the plaintiff that the use of the portable bars constituted a "particular method of operation within a bar that creates an inherently foreseeable heightened risk . . . ." The court stated that its ruling

---

[4] The court had heard largely undisputed evidence regarding the logistics of operating the beer tubs prior to ruling. We rely on the same facts.

was consistent with our Supreme Court's holding in *Fisher* v. *Big Y Foods, Inc.*, supra, 298 Conn. 414.

Whether the trial court properly construed and applied the mode of operation rule is a question of law over which we exercise plenary review. See id., 424. The mode of operation rule is a relatively recent development in Connecticut negligence law. In *Kelly* v. *Stop & Shop, Inc.*, supra, 281 Conn. 791, Connecticut's seminal mode of operation case, our Supreme Court held that "a plaintiff establishes a prima facie case of negligence upon presentation of evidence that the mode of operation of the defendant's business gives rise to a foreseeable risk of injury to customers and that the plaintiff's injury was proximately caused by an accident within the zone of risk." The crux of the analysis is whether the premises owner's "design or operation . . . created a foreseeable risk of harm, thus retaining the causal link between the actions of the premises owner in designing and operating [its business] and the injured invitee." Id., 795 (*Zarella, J.,* concurring).[5]

[5] The Supreme Court noted in *Kelly* that there is a "close relationship between a defendant's affirmative act of negligence, which obviates the need for a business invitee to establish that the defendant had actual or constructive notice of a dangerous condition on the premises, and a defendant's liability to a business invitee under the mode of operation rule, pursuant to which notice of the dangerous condition also is unnecessary." *Kelly* v. *Stop & Shop, Inc.*, supra, 281 Conn. 785 n.6.

This "close relationship" between the two theories of liability is demonstrated in the present case. The jury was instructed that it could hold the defendant liable if it found "that the defendant created the unsafe condition of water on the floor by [its] actions" with respect to the service from the beer tub or if it found that the plaintiff's injuries "were caused by the mode of operation by which the defendant operated its business . . . ." At trial, in support of her theory that the defendant had affirmatively created the hazardous condition, the plaintiff argued that the defendant "created the defect by taking bottles of beer out of [the tub] that were in ice and water." In her appellate brief, the plaintiff argues that the mode of operation rule was properly invoked, in part, because of the "defendant's chosen method of selling dripping wet beers from beer tubs." If this were so, there would be no need to invoke the mode of operation rule.

The mode of operation rule was adopted in a slip and fall case that occurred at a self-service salad bar within a supermarket. See id., 768 (majority opinion). Our Supreme Court explained that the rule "evolved in response to the proliferation of self-service retail establishments," in which patrons are encouraged "to obtain for themselves from shelves and containers the items they wish to purchase, and to move from one part of the store to another . . . thus increasing the risk of droppage and spillage." (Internal quotation marks omitted.) Id., 778. In such an environment, proving that the premises owner, through its employees, had actual or constructive notice of a specific unsafe condition may prove "insuperable." Id., 788. Moreover, an unattainable notice requirement would do little to incentivize businesses to implement reasonable policies designed to prevent injuries "caused by the foreseeable conduct of . . . customer[s] . . . ." Id., 789. When the mode of operation rule applies, the plaintiff need not prove notice of the specific hazardous condition that caused his injury if he can show that the business engaged in a deliberate method of operation which would make the frequent occurrence of similar conditions reasonably foreseeable. See *Fisher* v. *Big Y Foods, Inc.*, supra, 298 Conn. 419 n.10.

This altered notice inquiry under the mode of operation rule has been justified on two theories. First, when the owner of the premises increases the risk of "dangerous, transitory conditions" by the way particular aspects of the business have been designed, the owner may fairly be deemed to have constructive notice of those conditions when they become manifest. *Kelly* v. *Stop & Shop, Inc.*, supra, 281 Conn. 780. Second, the premises owner may be imputed to have actual knowledge of the hazards that it has had a hand in creating by purveying merchandise or food in a manner that increases the likelihood of such hazards arising. Id.,

781. Either way, "the fundamental rationale underlying the rule is the same: Because the hazard is a foreseeable consequence of the manner in which the business is operated, the business is responsible for implementing reasonable measures to discover and remedy the hazard."[6] Id.

The rule's application effects a burden shifting. Upon the plaintiff's prima facie showing of a negligent mode of operation, the burden shifts to "[t]he defendant [to] rebut the plaintiff's evidence by producing evidence that it exercised reasonable care under the circumstances." Id., 791. The burden then shifts back to the plaintiff to "establish that those steps taken by the defendant to prevent the accident were not reasonable under the circumstances." (Internal quotation marks omitted.) *Fisher* v. *Big Y Foods, Inc.*, supra, 298 Conn. 420 n.13. The ultimate burden of proof rests with the plaintiff. *Kelly* v. *Stop & Shop, Inc.*, supra, 281 Conn. 792.

"The mode-of-operation rule is of limited application because nearly every business enterprise produces some risk of customer interference. If the mode-of-operation rule applied whenever customer interference was conceivable, the rule would engulf the remainder of negligence law. A plaintiff could get to the jury in most cases simply by presenting proof that a store's

---

[6] The Supreme Court in *Kelly* quoted with approval the Colorado Supreme Court's cogent explication of why, in certain situations, the notice requirements of common-law premises liability should give way to a different inquiry: "[T]he basic notice requirement springs from the [notion] that a dangerous condition, when it occurs, is somewhat out of the ordinary. . . . In such a situation, the storekeeper is allowed a reasonable time, under the circumstances, to discover and correct the condition, unless it is the direct result of his (or his employees') acts. However, when the operating methods of a proprietor are such that dangerous conditions are continuous or easily foreseeable, the logical basis for the notice requirement dissolves." (Internal quotation marks omitted.) *Kelly* v. *Stop & Shop, Inc.*, supra, 281 Conn. 787, quoting *Jasko* v. *F. W. Woolworth Co.*, 177 Colo. 418, 420–21, 494 P.2d 839 (1972).

customer could have conceivably produced the hazardous condition. For this reason, a particular mode of operation only falls within the mode-of-operation rule when a business can reasonably anticipate that hazardous conditions will regularly arise. . . . A plaintiff must demonstrate the foreseeability of third-party interference before [a court] will dispense with traditional notice requirements." (Citations omitted.) *Chiara* v. *Fry's Food Stores of Arizona, Inc.*, 152 Ariz. 398, 400–401, 733 P.2d 283 (1987).[7]

In *Fisher* v. *Big Y Foods, Inc.*, supra, 298 Conn. 437, our Supreme Court expressed concern about an overly expansive application of the mode of operation rule and recognized limits on its application. In that case, a shopper at a Big Y supermarket slipped and fell in a puddle of syrupy liquid. Id., 417. The source of the liquid was not definitively ascertained because there was no broken container in the vicinity of the puddle. Id., 417 n.4. Video surveillance footage showed that the aisle in which the puddle was located had been swept seven minutes prior to the shopper's fall. Id., 417. Rather than attempt to prove that the defendant store owner had actual or constructive knowledge of the apparent spill, the plaintiff shopper prevailed at trial by successfully invoking the mode of operation theory of premises liability as articulated in *Kelly*. Id., 420.

The Supreme Court reversed the judgment, rejecting the proposition that "self-service merchandising itself" can be a negligent mode of operation.[8] Id., 424. If that

---

[7] *Chiara* was cited with approval by our Supreme Court in *Kelly* v. *Stop & Shop, Inc.*, supra, 281 Conn. 782, 792.

[8] In this regard, compare *Fisher* with *Wollerman* v. *Grand Union Stores, Inc.*, 47 N.J. 426, 429, 221 A.2d 513 (1966) (mode of operation rule applied where "green beans are sold from open bins on a self-service basis"), and *Chiara* v. *Fry's Food Stores of Arizona, Inc.*, supra, 152 Ariz. 398 (mode of operation rule applied where creme rinse spill in a supermarket caused plaintiff's injury). Specifically, in some jurisdictions, an entire supermarket seemingly can be considered a "zone of risk."

were so, the court reasoned, every aspect of a modern supermarket would be rendered a " 'zone of risk' due to the readily established fact that merchandise, as a general matter, sometimes falls and breaks." Id. The *Fisher* court further asserted that it would be unsound to characterize as inherently hazardous "a modern supermarket's *only* method of operation"—that is, permitting customers to serve themselves. (Emphasis in original.) Id., 438. This would be similar to charging a movie theatre with employing a negligent method of operating by showing movies in a darkened space. Id.

The court in *Fisher* suggested that the mode of operation rule is applied appropriately only when a business employs "a more specific method of operation *within*" the general business environment that is distinct from the ordinary, inevitable way of conducting the sort of commerce in which the business is engaged. (Emphasis in original.) Id., 427. Thus, a supermarket that sells groceries in the usual self-service fashion is not engaged in a specific "mode of operation"; it is simply in the business of selling groceries. See id., 423 ("the mode of operation rule . . . does not apply generally to all accidents caused by transitory hazards in self-service retail establishments, but rather, only to those accidents that result from particular hazards that occur regularly, or are inherently foreseeable, due to some specific method of operation employed on the premises"). In order to invoke the mode of operation rule, and to satisfy her burden of establishing a prima facie case, then, the plaintiff must make an "additional showing that a more specific method of operation *within* a . . . retail environment gave rise to a foreseeable risk of a regularly occurring hazardous condition similar to the particular condition that caused the injury." (Emphasis in original.) Id., 427. Merely describing the customary

way of conducting a particular kind of business is not enough.[9]

## A

We first address the defendant's claim that the mode of operation rule applies only to self-service businesses, or businesses that include self-service components. Although *Kelly* and *Fisher* both resolved slip and fall cases that occurred in contemporary self-service supermarkets, there is no reason for limiting application of the doctrine to only those scenarios. The dispositive issue is not the presence of self-service, but whether "the operating methods of a proprietor are such that dangerous conditions are continuous or easily foreseeable . . . ." (Internal quotation marks omitted.) *Kelly* v. *Stop & Shop, Inc.*, supra, 281 Conn. 787. Self-service, in some circumstances, may present a situation in which the proprietor's "operating methods" enhance the risk of recurring dangerous conditions brought about by third party interference; *Chiara* v. *Fry's Food Stores of Arizona, Inc.*, supra, 152 Ariz. 401; but it logically is not the only business method that can have

---

[9] This idea was developed more thoroughly by the North Carolina Court of Appeals in *Kearns* v. *Horsley*, 144 N.C. App. 200, 552 S.E.2d 1, review denied, 354 N.C. 573, 559 S.E.2d 179 (2001), which was discussed with approval in *Fisher* v. *Big Y Foods, Inc.*, supra, 298 Conn. 438–39. In *Kearns*, the court rejected the application of the mode of operation rule where a moviegoer tripped over torn carpeting in a darkened theatre. The court reasoned that showing movies in a dark space is a "theatre's *only* method of operation and as such, the theatre cannot be considered negligent but instead, its patrons must be considered to have assumed the risk in order to take part in the activity provided." (Emphasis in original.) *Kearns* v. *Horsley*, supra, 205. The court further observed that "the darkening of the area within the theatre where the movie is being shown, is an operation of practicality and compl[ies] with ordinarily used standards of care in [the] particular activit[y]." (Internal quotation marks omitted.) Id. Thus, the mode of operation rule did not apply and, in order to prevail, the plaintiff had to show that the theatre operator had actual or constructive notice of the tear in the carpeting. Id., 207.

such an effect.[10] Moreover, the Supreme Court in *Fisher* cited to cases from other jurisdictions where the mode of operation rule has been applied to myriad methods of operation apart from self-service retail enterprises. See *Fisher* v. *Big Y Foods, Inc.*, supra, 298 Conn. 430. Therefore, the defendant's first challenge to the applicability of the mode of operation rule is unavailing.

B

The defendant additionally challenges the court's conclusion that the sale of beer from the ice filled tubs constituted a "particular method of operation within a bar that create[d] an inherently foreseeable heightened risk . . . ." The defendant specifically contends that the only "mode of operation" advanced by the plaintiff is the service of iced beer at a nightclub. Because the method of service utilized at Hula Hank's is not appreciably different from the methods necessarily employed by all bars that serve cold beverages, the defendant argues that the mode of operation rule is inapplicable. The plaintiff counters that the mode of operation rule applies to the defendant's "chosen method of selling dripping wet beers from beer tubs." She identifies several aspects of the beer tub method of service that supposedly distinguish it from more refined means of selling beer, namely, that the ice filled tubs were uninsulated; that they were elevated on speaker boxes, which required the server to hand the drink to the patron who stood several feet below; and that the beer was not wiped down before it was given to a customer.[11]

[10] The Supreme Court in *Fisher* v. *Big Y Foods, Inc.*, supra, 298 Conn. 428, did observe that many mode of operation cases "involved produce displays or other instances of unwrapped and/or ready to eat food that customers were encouraged to handle . . . ." Indeed, the court stated that "[t]he mode of operation rule most typically is applied in such circumstances." Id., 428 n.22.

[11] These aspects of the plaintiff's mode of operation claim, related to the allegedly careless service of beer from the tubs, assert affirmative negligent acts by employees of the defendant. In other words, the creation of hazardous, wet conditions in the vicinity of the beer tubs does not depend on

According to the plaintiff, this creates the risk that patrons will "congregate [near the tubs] or move about the premises with the wet beer bottles or cans, thus causing water to pool on the floor . . . ."

We agree with the defendant that, although the plaintiff has gone to great lengths to distinguish the method of serving beer at issue here, when stripped of the embellishment, she has merely described the transaction that always takes place when a patron orders a bottle of beer at a bar, a nightclub, or a wedding reception. The bottle is removed by a server, either from a refrigerator or a cooler filled with ice, and handed to the patron, who is separated from the server by a bar or other service area. The service of cold drinks will inevitably result in slippery surfaces, as drinks are spilled or condensation from drinks accumulates, but this will happen regardless of whether a nightclub chooses to serve beer from a "beer tub" propped on a speaker or from behind a more traditional bar.[12] Put

further actions by customers. It is not clear under Connecticut law whether recurring, affirmative negligent acts by employees can be the basis for a mode of operation claim. The justification proffered for adopting the mode of operation rule in *Kelly,* however, suggests that third party interference is a necessary component of such a claim. See *Kelly* v. *Stop & Shop, Inc.,* supra, 281 Conn. 786–90. *Fisher* forecloses application of the rule to these facts, and, in any event, because there is no requirement under traditional negligence law principles for a plaintiff to prove notice where the defect is directly caused by the owners of the premises, the invocation of the mode of operation rule in such circumstances is superfluous and unnecessary.

[12] In this context, it is significant that the complaint in this regard alleged, as an increased hazard, that drinks were more likely to be dropped or spilled when served from the beer tubs. The plaintiff has pointed us to nothing in the record that would substantiate such an increased risk. The plaintiff notes in her appellate brief that the "the defendant's policy of assigning a barback to identify and to clean spills in the area of the portable bars evidences that the hazard was inherently foreseeable and occurred regularly." This assertion, however, mischaracterizes the significance of the deployment of barbacks to the beer tub areas. A manager from the bar actually testified that barbacks were assigned not only to a particular beer tub, but also to the surrounding area, and that this staffing arrangement was consistent with the responsibilities of barbacks assigned to the permanent bars.

simply, a nightclub does not create liability under the mode of operation doctrine simply by serving chilled beer. Cf. *Fisher* v. *Big Y Foods, Inc.*, supra, 298 Conn. 438 ("a modern supermarket's *only* method of operation is to place items on shelves for customer selection and removal"; as such, that method of commerce cannot be considered negligent [emphasis in original]). Just as theatres must dim their lights to show movies, a nightclub likely could not do business at all if it could not serve cold drinks. See *Kearns* v. *Horsley*, 144 N.C. App. 200, 205, 552 S.E.2d 1, review denied, 354 N.C. 573, 559 S.E.2d 179 (2001).

Moreover, if we were to accept that the defendant's service of beer constituted an inherently hazardous mode of operation, virtually the entire nightclub would become a "zone of risk" simply because drinks do sometimes spill or otherwise produce slippery surfaces. See *Fisher* v. *Big Y Foods, Inc.*, supra, 298 Conn. 424. "Accordingly, the requirement of establishing that an injury occurred within some 'zone of risk' essentially would be rendered superfluous." Id. The result would be that any slip and fall on a wet surface, no matter how briefly the slippery condition existed, would shift the burden to the nightclub's owners to show that they had acted reasonably.[13] This would be inconsistent with

[13] We note that this result is not draconian. In many situations, traditional premises liability may afford relief. Nothing prevents recovery if the owner affirmatively creates the actual defect; see *Kelly* v. *Stop & Shop, Inc.*, supra, 281 Conn. 785 n.6; and what constitutes reasonable inspection in such circumstances may result in a fairly low threshold in establishing constructive notice. If a bar employee is standing next to a puddle, a fact finder may find actual notice; such a showing would not be "insuperable."

It is, of course, possible that the jury in this case could have applied traditional notice standards and reached the same result. See part I of this opinion. In its instructions to the jury, the court charged that the defendant could be liable if it found the defendant's affirmative acts created the hazardous condition. The mode of operation rule aptly fills the narrow niche where the actual defect is caused by a third party in circumstances in which the defendant created a zone of danger with increased risk of frequently repeating hazardous conditions.

the Supreme Court's admonition that the mode of operation rule is meant to be a narrow exception to the notice requirements under traditional premises liability law. See id., 437.

The application of the mode of operation rule in this case was flawed in another respect. The only customer interference alleged by the plaintiff was that patrons who purchased beer from the tubs would move around the bar, "carrying, consuming and discarding the wet beer bottles or cans . . . ." These allegations—if they amount to customer interference at all—fail for the same reason as the allegations with respect to the operation of the tub. If the mode of operation rule could be satisfied by bar patrons carrying wet glasses, there would be no effective limitation on the application of the rule.

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.