NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

SJC-11786


ANGELA SARKISIAN vs. CONCEPT RESTAURANTS, INC.[1]



Worcester.      March 5, 2015. - June 23, 2015.

Present:  Gants, C.J., Spina, Cordy, Botsford, Duffly, Lenk, & Hines, JJ.



Negligence, One owning or controlling real estate.  Notice.
    Practice, Civil, Summary judgment.



Civil action commenced in the Worcester Division of the District Court Department on July 6, 2010.

The case was heard on a motion for summary judgment by Steven E. Thomas, J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.


Karen L. Stern for the plaintiff.
Richard L. Neumeier for the defendant.
Charlotte E. Glinka, Michael C. Najjar, & Thomas R. Murphy, for Massachusetts Academy of Trial Attorneys, amicus curiae, submitted a brief.
John F. Brosnan, for Massachusetts Defense Lawyers Association, amicus curiae, submitted a brief.

---

[1] Doing business as the Liquor Store.

CORDY, J. In this case we decide whether the "mode of operation" approach to premises liability, adopted by this court in Sheehan v. Roche Bros. Supermkts., Inc., 448 Mass. 780, 788 (2007), applies to slip-and-fall incidents occurring outside of the context of self-service establishments. Traditionally, a plaintiff asserting premises liability has been required to show that the owner of the premises had actual or constructive notice of an unsafe condition that gave rise to an injury for which compensation is sought. See id. at 782-783. Under the mode of operation approach, however, the plaintiff satisfies the notice requirement by showing that the injury was attributable to a reasonably foreseeable unsafe condition related to the owner's chosen mode of operation. See id. at 786.

The plaintiff, Angela Sarkisian, broke her leg after slipping and falling on a wet dance floor at a nightclub owned by the defendant, Concept Restaurants, Inc. A judge in the District Court granted summary judgment in favor of the defendant based on the plaintiff's inability to show that the defendant had actual or constructive notice of the unsafe condition that caused her injury. We conclude that, on the facts presented by this case, the mode of operation approach

applies and summary judgment granted to the defendant must be reversed.[2]

1.  Background.  We recite the material facts in the light most favorable to the plaintiff, the party who opposed the motion for summary judgment.  Augat, Inc. v. Liberty Mut. Ins. Co., 410 Mass. 117, 120 (1991).  The defendant operated a nightclub in Boston.  The nightclub was licensed to hold 574 patrons and had a wooden dance floor measuring approximately fifty feet in length.  On the dance floor itself sat two bars -- one fifty-feet long and the other fifteen-feet long -- from which patrons could purchase alcoholic and nonalcoholic beverages served in plastic cups.  Patrons were permitted to consume their beverages on the dance floor or, alternatively, in a lounge area, which was accessible by a set of stairs at the rear of the dance floor.

On August 22, 2009, at around 9:45 P.M., the plaintiff arrived at the nightclub with a group of friends.  A disc jockey was playing music, and the dance floor was crowded with dancing patrons, many of whom held drinks as they danced.  The nightclub's dim lighting was accented by strobe lights that flashed on the dancing patrons.  The nightclub was staffed with eight security guards, three barbacks, and a manager, each of

---

[2] We acknowledge the amicus briefs submitted by the Massachusetts Academy of Trial Attorneys and the Massachusetts Defense Lawyers Association.

whom was generally responsible for ensuring that the dance floor remained free of debris, notwithstanding the absence of any written policies to that effect.

The plaintiff and her friends danced for several hours without noticing any spilled liquids on the dance floor. At around 1:30 A.M., the plaintiff traveled up the stairs to the lounge area in search of a friend. Unable to locate her friend, she traveled back down the stairs less than one minute later. On returning to the dance floor, she stepped onto a wet surface, slipped, and fell. As a result of the fall, the plaintiff suffered two fractures to her right fibula and severe bruising.

The plaintiff filed a complaint in the District Court, seeking damages arising from the defendant's negligence. The defendant moved for summary judgment, arguing that the plaintiff failed to show that the defendant had actual or constructive notice of the dangerous condition and, thus, failed as a matter of law to carry her burden under the "traditional" approach to premises liability. The judge allowed the motion. The plaintiff appealed on the ground that the "mode of operation" approach to premises liability -- which alleviates the plaintiff's burden of proving notice -- supplied the proper legal standard. Panels of the Appellate Division of the

District Court and the Appeals Court affirmed.  We granted the plaintiff's application for further appellate review.[3]

2.  Discussion.  a.  Standard of review.  Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  See Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991); Mass. R. Civ. P. 56 (c), as amended, 436 Mass. 1404 (2002).  "A nonmoving party's failure to establish an essential element of her claim 'renders all other facts immaterial' and mandates summary judgment in favor of the moving party."  Roman v. Trustees of Tufts College, 461 Mass. 707, 711 (2012), quoting Kourouvacilis, supra at 711.

b.  Scope of mode of operation approach.  As a general rule, Massachusetts has adhered to the traditional approach to premises liability.  That approach, as set forth in the

---

[3] Notwithstanding the allowance of the defendant's motion for summary judgment, a separate order of judgment in favor of the defendant was never specifically entered on the District Court docket.  See Mass. R. Civ. P. 58 (a), as amended, 371 Mass. 908 (1977) ("Every judgment shall be set forth on a separate document . . ."); Mass. R. A. P. 4 (a), as amended, 464 Mass. 1601 (2013) ("notice of appeal . . . shall be filed with the clerk of the lower court within thirty days of the date of the entry of the judgment . . .").  Nonetheless, the parties, Appellate Division of the District Court, and Appeals Court treated the allowance of the defendant's motion as the judgment. Finding no prejudice to either of the parties in the premature filing of the notice of appeal, we treat the appeal as if judgment had entered.  See Ramaseshu v. Board of Registration in Med., 441 Mass. 1006, 1006 n.1 (2004); Swampscott Educ. Ass'n v. Swampscott, 391 Mass. 864, 865-866 (1984).

Restatement (Second) of Torts § 343 (1965), provides that "[a] possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and (c) fails to exercise reasonable care to protect them against the danger." Where the condition consists of spillage on the floor of a place of business, the first element is satisfied if the operator of that business "caused [the] substance, matter, or item to be on the floor; the . . . operator had actual knowledge of its presence; or the substance, matter, or item had been on the floor so long that the . . . operator should have been aware of the condition." Sheehan, 448 Mass. at 782-783.

In Sheehan, we acknowledged that there are circumstances in which strict application of the traditional approach's notice requirement will produce unjust results. Id. at 788. In that case, for example, the plaintiff slipped and fell on a grape in a grocery store. The grapes were packaged in individual bags that were easily opened by hand and, thus, were susceptible to spillage by customers. Id. at 781. We noted that the evolution of grocery stores from clerk-assisted to self-service operations

created new risks to customers, "who generally may not be as careful and vigilant as a store owner because customers are not focused on the owner's concern of keeping items off the floor to avoid potential foreseeable risks of harm to other patrons." Id. at 784-785.

Given that the notice inquiry in slip and fall cases is generally a factor of how long the dangerous substance has been on the floor, we concluded that it would be "'unjust to saddle the plaintiff with the burden of isolating the precise failure' that caused an injury, particularly where a plaintiff's injury results from a foreseeable risk of harm stemming from an owner's mode of operation." Id. at 788, quoting Wollerman v. Grand Union Stores, Inc., 47 N.J. 426, 430 (1966). Accordingly, we held that the notice requirement would be satisfied where "a plaintiff proves that an unsafe condition on an owner's premises exists that was reasonably foreseeable, resulting from an owner's self-service business or mode of operation, and the plaintiff slips as a result of the unsafe condition." Sheehan, 448 Mass. at 791.

Our adoption of the mode of operation approach in Sheehan did not supplant the general requirement that the plaintiff prove notice, nor did it modify in any way the remaining two elements of premises liability set forth in the Restatement (Second) of Torts § 343. Sheehan, 448 Mass. at 792. Rather, it

refined the Restatement's notice requirement in a narrow subset of premises liability cases.  The defendant argues that this narrow subset of cases is strictly confined to slip-and-fall incidents occurring in self-service establishments.  We disagree.

The principles set forth in the Restatement (Second) of Torts are consistent with the application of the mode of operation approach outside of the context of self-service establishments.  The Restatement provides that a possessor of land who holds it open to the public for business purposes has a duty to exercise reasonable care to protect business visitors from harms caused by third parties, e.g., other business visitors.  Restatement (Second) of Torts § 344.  The comments observe that although a warning will often supply the necessary protection, there are "many situations in which the possessor cannot reasonably assume that a warning will be sufficient." Id. at § 344 comment d.  In such a situation, the landowner is "required to exercise reasonable care to use such means of protection as are available, or to provide such means in advance because of the likelihood that third persons . . . may conduct themselves in a manner which will endanger the safety of the visitor."  Id.  These comments reflect fundamental principles of tort liability that transcend the distinction between an errant grape in a supermarket aisle and a spilled beverage on a dance

floor. See Sheehan, 448 Mass. at 788, quoting Restatement (Second) of Torts § 343 comment e ("one entering a store, theatre, office building, or hotel . . . is entitled to expect that his host will make far greater preparations to secure the safety of his patrons than a householder will make for his social or even his business visitors").

The defendant suggests that applying the mode of operation approach outside of the self-service context will result in a regime of strict liability. We again disagree. The law demands reasonable care, not perfection. See Restatement (Second) of Torts §§ 343, 344. See also Sheehan, 448 Mass. at 790 ("Adoption of [the mode of operation] approach would not hold owners strictly liable to all plaintiffs involved in slip-and-fall incidents on their premises"). Irrespective of the particular mode of operation involved, the plaintiff bears the burden of establishing that the defendant failed to exercise reasonable care in protecting its patrons from the unsafe conditions facilitated by its mode of operation.[4] See id. at 790-791.

---

[4] In the case of a nightclub operating with bars on the dance floor and permitting patrons to dance with their drinks, such reasonable care might include the employment of sufficient staff charged with monitoring and cleaning up spilled liquid on the dance floor at sufficient intervals, or the use of beverage containers on the dance floor that are less likely to spill liquid when jostled. See Restatement (Second) of Torts § 344 comment f (1965).

Nonetheless, it is true that "nearly every business enterprise produces some risk of customer interference," and, in the absence of limiting principles, "[a] plaintiff could get to the jury in most cases simply by presenting proof that a store's customer could have conceivably produced the hazardous condition." Chiara v. Fry's Food Stores of Ariz., Inc., 152 Ariz. 398, 400-401 (1987). In view of these concerns, the court in Sheehan limited the mode of operation approach to situations where a business should reasonably anticipate that its chosen method of operation will regularly invite third-party interference resulting in the creation of unsafe conditions, and a visitor suffers an injury after encountering the condition so created. Sheehan, 448 Mass at 791. The court in Sheehan did not, however, limit this modern refinement of the notice requirement to unsafe conditions arising from self-service operations. See generally id. at 785-786, 791, citing Jackson v. K-Mart Corp., 251 Kan. 700, 701, 710-711 (1992) (spilled juice purchased from in-store cafeteria). See also Gump v. Wal-Mart Stores, Inc., 93 Haw. 417, 419-421 (2000) (fallen french fry purchased from in-store fast-food restaurant); McDonald v. Safeway Stores, Inc., 109 Idaho 305, 307-308 (1985) (melted ice cream dispensed by employees). As was aptly observed in Konesky v. Post Road Entertainment, 144 Conn. App. 128, 140-141 (2013), a case on which the defendant relies, self-service is one

"situation in which the proprietor's 'operating methods' enhance the risk of recurring dangerous conditions brought about by third party interference . . . but it logically is not the only business method that can have such an effect."  Accordingly, we now state explicitly what was implicit in Sheehan, namely, that so long as the aforementioned parameters for applying the mode of operation approach exist, there is no basis for limiting its application to self-service establishments.[5]

c.  Defendant's mode of operation.  Alternatively, the defendant argues that even if the mode of operation approach could be applied outside of the self-service context, it should be further narrowed to exclude situations where a nightclub's only feasible method of operation is to serve drinks to patrons who are free to move about the premises.  In support of this position, the defendant attempts to analogize this case to Konesky, 144 Conn. App. at 141-142, a case involving a nightclub that served cans and bottles of beer to patrons from large plastic tubs filled with ice.  Id. at 130-131.  The plaintiff in that case slipped and fell on a puddle located near one of the "beer tubs" and sustained injuries.  Id. at 131.  She filed a

---

[5] The defendant asserts that this so-called "extension" of the mode of operation approach constitutes a new rule that may only be applied prospectively.  For the reasons stated in Sheehan v. Roche Bros. Supermkts., Inc., 448 Mass. 780, 791 n.9 (2007), we reject this assertion.

negligence action against the nightclub, arguing that the nightclub's use of the beer tubs created an inherent risk of recurring danger meriting the application of the mode of operation approach. Id. at 131-132. The court disagreed, concluding instead that the traditional approach was appropriate. Id. at 143-144.

The analogy to Konesky fails because the slippery condition in that case arose not from third-party interference, but from the employees' failure to wipe off the dripping wet cans and bottles before handing them to patrons. Id. at 141 & n.11. As the court explained, the mode of operation approach is superfluous where the defendant, rather than a third party, affirmatively causes the unsafe condition. Id. See Sheehan, 448 Mass. at 782-783, 786 (under traditional approach, plaintiff must prove either that owner caused unsafe condition or had notice of it; under mode of operation approach, foreseeability of condition satisfies notice requirement). Although the plaintiff in the Konesky case also argued that patrons exacerbated the unsafe condition by carrying the dripping beverages around the premises, the court cogently observed that the same is true any time "a patron orders a bottle of beer at a bar, a nightclub, or a wedding reception." Konesky, 144 Conn. App. at 142. We agree with the Konesky court that an establishment "does not create liability under the mode of

operation doctrine simply by serving chilled beer." Id. at 143. Importantly, however, those are not the facts of this case.

Here, the nightclub's mode of operation included the sale of beverages in plastic cups from bars located on a dance floor. The patrons were then permitted to dance while holding their beverages. It was reasonably foreseeable that such a mode of operation would result in a recurring theme of cups being jostled and liquid being jettisoned by patrons onto the dance floor. Where that liquid is spilled on a floor, crowded with dancers, in a dimly lit setting with flashing strobe lights, and the only route of travel to and from the lounge area is across that dance floor, common sense tells us that the spill creates an unsafe condition that a patron such as the plaintiff is ill-suited to discern, except, perhaps, by the happenstance of a slip and fall.

Although the general risk of an unsafe condition occurring might be equally obvious to both owner and patron, under these circumstances, the owner is in a far better position to identify and investigate the source of the condition once it has occurred. Sheehan, 448 Mass. at 789. Moreover, it is not reasonable for the owner to ignore a recurring risk of danger arising from its chosen mode of operation where it would be reasonable to expect that a patron who has entered the establishment for the purpose of dancing would choose to

encounter that risk rather than turn back.  See Restatement (Second) of Torts § 344 & comment d.  Cf. Papadopoulos v. Target Corp., 457 Mass. 368, 379 (2010) ("It is not reasonable for a property owner to leave snow or ice on a walkway where it is reasonable to expect that a hardy New England visitor would choose to risk crossing the snow or ice rather than turn back or attempt an equally or more perilous walk around").  Yet, in cases such as this, the owner has scarce incentive to act reasonably, because the injured patron will seldom be able to discern the origin of the unsafe condition and, thus, satisfy the notice requirement under the traditional approach to premises liability.  See Sheehan, 448 Mass. at 788 ("traditional approach requires plaintiffs to prove how long the substance creating the hazardous condition has been on the floor, thereby imposing an unfair burden on them to adduce evidence that is more readily accessible to defendants").  It is apparent, therefore, that the policies underlying the mode of operation approach apply with the same force here as they did in Sheehan. Fidelity to those policies demands that the mode of operation approach be applied in this case.

At oral argument, the defendant warned of the parade of horribles that would follow such a result.  According to the defendant, courts will begin applying the mode of operation approach to any establishment in which patrons are permitted to

carry their own drinks, whether they are traveling, for example, from a bar to a table in a restaurant or from a concession stand to their seats at a sporting event. We dispel any such notion. A plaintiff does not get to the jury simply by showing that an establishment sells drinks to patrons who are then allowed to travel about the premises. See Konesky, 144 Conn. App. at 142. A plaintiff may get to the jury, however, by showing that patrons who wish to travel between the bar and their seats are forced -- as a recurring feature of the mode of operation -- to navigate in the dark through a crowd of dancing people holding plastic cups filled with liquid over a wooden floor. Spillage is conceivable in either circumstance, but only in the latter is the regularity of such spillage tied to the mode of operation in a manner that justifies placing the business on notice of the resulting unsafe condition. See Chiara, 152 Ariz. at 400-401.

Finally, the defendant argues that the mode of operation approach is inappropriate on the facts of this particular case, because there is no evidence of regular spillage or of a causal nexus between such spillage and the plaintiff's injury. These arguments are undercut considerably by the nightclub manager's deposition testimony that "spills on the dance floor are part of the business." Considering the evidence in the light most favorable to the plaintiff, Augat, 410 Mass. at 120, the reasonable inference is that a spilled beverage produced the wet

surface on which the plaintiff slipped.  Cf. <u>Leary</u> v. <u>Jordan</u> <u>Marsh Co</u>., 322 Mass. 309, 310 (1948) ("There was no evidence of any wet spots upon the floor other than at the site of the accident, except near the entrance.  The absence of any evidence of wet spots between any of the entrances and the spots in question negatives any contention that these spots came from water tracked in the store and indeed leaves the rain as the source of these spots a matter of conjecture and surmise").  Whether the defendant exercised reasonable care to protect patrons from such spillage is a question for the jury.  <u>Sheehan</u>, 448 Mass. at 792.

3.  <u>Conclusion</u>.  For the foregoing reasons, we conclude that summary judgment was improperly granted and that the defendant had notice of the inherent risks associated with its chosen mode of operating its dance floor.  We reverse the order granting summary judgment in favor of the defendant and remand the case to the District Court for further proceedings consistent with this opinion.

<u>So ordered</u>.