******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

KATERINA PORTO *v.* PETCO ANIMAL
SUPPLIES STORES, INC.
(AC 37516)

DiPentima, C. J., and Alvord and Gruendel, Js.

*Argued May 18—officially released August 16, 2016*

(Appeal from Superior Court, judicial district of New
Haven, Burke, J.)

*Chet L. Jackson*, for the appellant (plaintiff).

*Kathleen M. Grover*, with whom was *P. Jo Anne
Burgh*, for the appellee (defendant).

*Opinion*

GRUENDEL, J. Traditionally, in a premises liability case, a plaintiff must prove that the defendant had actual or constructive notice of the hazard that injured her. *Baptiste* v. *Better Val-U Supermarket, Inc.*, 262 Conn. 135, 140, 811 A.2d 687 (2002). Our Supreme Court adopted a narrow exception to that notice requirement in *Kelly* v. *Stop & Shop, Inc.*, 281 Conn. 768, 770, 918 A.2d 249 (2007), where in it held that a supermarket that operated a self-service salad bar was liable for slips and falls suffered by patrons near the service area because the store's self-service mode of operation created an inherently foreseeable hazard. In the present case, the plaintiff, Katerina Porto, seeks to extend that holding to pet stores that allow leashed animals inside its stores, arguing that their "pet-friendly mode of operation" caused her to slip and fall in dog urine while a customer at the store of the defendant, Petco Animal Supplies Stores, Inc.[1] The trial court held that the mode of operation rule did not apply under those facts and rendered judgment in favor of the defendant. We agree, and affirm the judgment of the trial court.

In its memorandum of decision the court found the following facts. The plaintiff is a healthy, twenty-eight year old woman employed as a registered nurse. On August 20, 2012, the plaintiff and her friend visited the defendant's Hamden location to return a bag of pet food. They entered the store, and on their way to the cash register, the plaintiff slipped on a puddle of liquid. The plaintiff believed that the liquid was dog urine based on her experience as a dog owner. During her fall, the plaintiff tried to catch herself, but rolled her ankle in the process and sustained several injuries.

The plaintiff was generally aware that the defendant allowed leashed animals in the store and she acknowledged at trial that "she should keep an eye out on the floor when walking in the defendant's store." She was unaware of any animals in the store on August 20, 2012, and has never seen any other puddles in the defendant's stores similar to the one she slipped on.

Following her fall, the plaintiff notified the defendant's cashier that "she had just fallen in what she believed was urine." The plaintiff was informed that someone would clean up the mess and that Timothy Smith, the store manager, would complete an accident report. On August 20, 2012, Smith was the assistant manager responsible for the defendant's Hamden store, and he had worked for the defendant in various locations and capacities throughout the prior nine years. The plaintiff testified that Smith saw her fall on the store's surveillance system, but Smith later testified that he was unsure if he had.

Smith completed the incident report electronically and described the cause as "Water/Ice." That categori-

zation of the accident was predetermined by a drop-down menu and was not Smith's description. Smith also described the incident in his own words, stating that the plaintiff "had slipped in dog urine." Smith believed that the incident was not a "questionable case," and he indicated that in his report, stating that the plaintiff's description was credible.

At trial, Smith described the defendant as "a pet specialty store that attempts to foster relationships with its customers and assist them in providing a happy and healthy home for their pets." The defendant specifically permits "customers to bring any animal into its store as long as the animal is on a leash." Smith described the defendant's policy as an attempt to "foster a relationship" with customers and to "provide its customers with animal-specific assistance, such as determining the proper size product for an animal."

Smith testified that the defendant expects occasional pet messes and that there are sanitation stations throughout the store to address them. Although no single employee is responsible for cleaning up pet messes, employees regularly walk the store aisles to talk with customers, and the defendant's policy is for immediate cleanup when employees become aware of pet messes. Smith testified that "there were no further incidents or complaints regarding puddles in the store on August 20, 2012." Further, there were no similar accidents in the prior six years Smith worked at the store and pet messes occurred infrequently.[2]

On July 26, 2013, the plaintiff brought this action against the defendant, alleging that the store had negligently failed to prevent, warn of, or clean up the dog urine on which she slipped and fell. The defendant filed an answer, admitting that at all times it was "in the business of selling consumer/pet products and was acting through its agents, servants and/or employee." The defendant further admitted that it "maintained, controlled, and possessed the subject premises." The defendant denied the plaintiff's allegations of negligence and "pleaded insufficient knowledge to the remainder of the complaint's paragraphs, leaving the plaintiff to her proof." The matter was tried before the court on August 13, 2014.

At trial, the plaintiff provided no evidence that the defendant had actual or constructive notice of the puddle on the floor where she slipped and fell. She argued that proof of notice was unnecessary because, under the mode of operation rule, she need only prove that the defendant's particular mode of operation created an inherently foreseeable or regularly occurring hazard, and the accident occurred within an identifiable zone of risk.

In its memorandum of decision, the court reasoned that the mode of operation rule was inapplicable to the

facts of this case because the "hazardous condition appear[ed] to have been brought into the store" from the outside, distinguishing this from the "typical case in which a hazardous condition is caused by the spilling or dropping of an item for sale" already within the store. Further, the court found that, even if the mode of operation rule applied, the defendant took reasonable precautions to "keep its premises free of hazardous conditions."

On appeal, the plaintiff claims that the court improperly held that the mode of operation rule did not extend to the defendant's "pet-friendly method of operation." She argues that her case falls under the rule because allowing leashed pets into the store created an inherently foreseeable risk of pet messes, and the leashed pets should be considered "moving" zones of risk. We disagree.

The plaintiff's principal claim concerns the proper construction and application of the mode of operation rule within premises liability. Whether the trial court properly construed and applied the mode of operation rule is a question of law over which we exercise plenary review. See *Fisher* v. *Big Y Foods Inc.*, 298 Conn. 414, 424, 3 A.3d 919 (2010).

It is undisputed that a retail store owes a duty to a business invitee to maintain its premises "in a reasonably safe condition." *Baptiste* v. *Better Val-U Supermarket, Inc.*, supra, 262 Conn. 140. Generally, to prevail on a negligence claim as a business invitee in a premises liability case, "it [is] incumbent upon [the plaintiff] to allege and prove that the defendant either had actual notice of the presence of the specific unsafe condition which caused [his injury] or constructive notice of it. . . . [T]he notice, whether actual or constructive, must be notice of the very defect which occasioned the injury and not merely of conditions naturally productive of that defect even though subsequently in fact producing it. . . . In the absence of allegations and proof of any facts that would give rise to an enhanced duty . . . [a] defendant is held to the duty of protecting its business invitees from known, foreseeable dangers." (Citations omitted; internal quotation marks omitted.) Id.

The mode of operation rule is a narrow exception to the traditional notice requirement and arose from our Supreme Court's decision in *Kelly* v. *Stop & Shop, Inc.*, supra, 281 Conn. 770. In *Kelly*, a supermarket patron slipped and fell on a piece of lettuce that dropped from a self-service salad bar located in the store. Id. Although there was no evidence that the store had notice of the fallen lettuce, the court held that "it is appropriate to hold [self-service businesses] responsible for injuries to customers that are a foreseeable consequence of their use of that merchandising approach unless they take reasonable precautions to prevent such injuries." (Emphasis omitted.) Id., 786. The court further stated

that "a plaintiff establishes a prima facie case of negligence upon presentation of evidence that the mode of operation of the defendant's business gives rise to a foreseeable risk of injury to customers and that the plaintiff's injury was proximately caused by an accident within the zone of risk." Id., 791.

Our Supreme Court in *Kelly* recognized that, in such circumstances, requiring a plaintiff to prove actual or constructive notice would be "unfair and unnecessary" because businesses "should be aware of the potentially hazardous conditions that arise from the way in which they conduct their business" and customer carelessness should be expected. Id., 778. The court reasoned that a store owner's mode of operation that increases the risk of "dangerous, transitory conditions" affords notice when the operation invites inherently foreseeable or regularly occurring hazards. Id., 780. "[S]elf-service operations give store customers additional freedom to browse and select the merchandise they desire, they also pose foreseeable hazards to those customers, who are generally less careful than store employees in handling the merchandise. . . . Essentially, the courts have recognized that stores engaging in foreseeably hazardous self-service operations may be deemed to have constructive notice of those conditions when they result in injury." (Internal quotation marks omitted.) Id., 779–80.

Two subsequent cases have clarified the scope of the mode of operation rule. First, in *Fisher* v. *Big Y Foods Inc.*, supra, 298 Conn. 437, our Supreme Court expressed a concern about an overly expansive application of the mode of operation rule, emphasizing that "the exception is meant to be a narrow one" because nearly every business enterprise produces some risk of customer interference. Id. In *Fisher*, a supermarket customer slipped and fell on a puddle of liquid located in one of the store's aisles. Id., 416–17. The puddle was purportedly from a fruit cocktail container that fell from the store's shelf. The plaintiff pursued a claim under the mode of operation rule and prevailed at trial. Id., 417.

On appeal, our Supreme Court reversed the judgment and held that "self-service merchandising itself" does not fall under the mode of operation rule. Id., 424. The court recognized that adopting such a rule would significantly broaden the rule's underlying intent. Id. The court reasoned that the rule applied to businesses that employed a more specific method of operation within the general business environment that is distinct from the ordinary, inevitable way of conducting the sort of commerce in which the business is engaged. Id., 427. The court emphasized that the rule does not extend to "all accidents caused by transitory hazards in self-service retail establishments, but rather, only to those accidents that result from particular hazards that occur regularly, or are inherently foreseeable, due to some

specific method of operation employed on the premises." Id., 423.

Second, in *Konesky* v. *Post Road Entertainment*, 144 Conn. App. 128, 144, 72 A.3d 1152 (2013), this court clarified both that the mode of operation rule required an identifiable zone of risk and that it did not impose liability on a business if the business' mode of operation was not appreciably different from that of similar businesses. In *Konesky*, a bar patron was injured after she slipped and fell on a puddle of water. Id, 131. The puddle was created from "beer tubs" the bar used to serve cold drinks. Id. The service of beer from these tubs was presented as the defendant's mode of operation. Id. At trial, the plaintiff successfully claimed that the defendant's mode of operation created the "slippery and hazardous" condition. Id.

On appeal, this court disagreed, rejecting the notion that a defendant incurs liability "under the mode of operation doctrine simply by serving chilled beer." Id., 142–43. This court did not accept that the defendant's "ice tubs" constituted "an inherently hazardous mode of operation" because "the entire [premises] would become a zone of risk simply because drinks do sometimes spill or otherwise produce slippery surfaces." (Internal quotation marks omitted.) Id., 143. We explained that such an expansive zone of risk "would be inconsistent with the Supreme Court's admonition that the mode of operation rule is meant to be a narrow exception to the notice requirements under traditional premises liability." Id., 143–44.

From these three cases, we distill three overarching requirements for the mode of operation rule to apply: (1) the defendant must have a particular mode of operation distinct from the ordinary operation of a related business; (2) that mode of operation must create a regularly occurring or inherently foreseeable hazard; and (3) the injury must happen within a limited zone of risk.

The facts of the present case do not meet any of these three requirements. First, the rule is inapplicable when a particular mode of operation is not considerably different from that of similarly operated businesses. See id., 141. The plaintiff here argues that the defendant's pet friendly mode of operation created a reasonably foreseeable pet mess hazard that caused the plaintiff's injuries. The rule applies when a business implements "a more specific method of operation within the general business environment that is distinct from the ordinary, inevitable way of conducting the sort of commerce in which the business is engaged." (Emphasis omitted; internal quotation marks omitted.) Id., 139. Here, the defendant operated as any other pet store would operate; it simply allowed leashed animals into the store. "Merely describing the customary way of conducting a particular kind of business is not enough." Id., 139–40. The record does not demonstrate

a specific method of operation that deviates from the general operation of similar businesses.[3]

Second, the mode of operation rule may substitute for notice to a retailer when the store's mode of operation invites careless customer interference, creating an expected, foreseeable hazard. *Kelly* v. *Stop & Shop, Inc.*, 281 Conn., supra, 788. Here, the primary distinction from the typical mode of operation case is the lack of a causal connection between the store's conduct and foreseeable careless customer interference in a particular zone of risk.[4] Although the defendant's store allowed customers to bring their leashed pets inside and being pet friendly is one of their "core values," that policy alone does not sufficiently relinquish the plaintiff from proving actual or constructive notice of the hazard. See *Konesky* v. *Post Road Entertainment*, supra, 144 Conn. App. 137–38. In our view, animal messes are not inherently foreseeable hazardous conditions resulting from a pet friendly business policy, particularly when the record fails to show that injuries caused by pet messes occurred regularly. The plaintiff's injury was the only one that occurred during the responsible manager's tenure.[5] Although there is the potential for pet messes to occur under the defendant's mode of operation, that potential alone does not give rise to a regularly occurring or inherently foreseeable hazard. See Id.

Third, application of the mode of operation rule "is meant to be a narrow one, and applies only to *those areas where the risk of injury is continuous or foreseeably inherent*" as a result of a store's mode of operation. (Emphasis added; internal quotation marks omitted.) *Fisher* v. *Big Y Stores, Inc.*, supra, 298 Conn. 437. These "areas" have been construed as a zone of risk where an owner should take extra precautions based on its mode of operation. Id. The underlying rationale is to impose liability for specific areas where there is a reasonably foreseeable risk. Id. In *Kelly*, our Supreme Court stated that it is "unfair and unnecessary" to require proof of actual or constructive notice under the mode of operation rule; it would be equally unfair to impose liability under the mode of operation when there is no identifiable zone of risk of which proprietors should be on notice. *Kelly* v. *Stop & Shop, Inc.*, supra, 281 Conn. 778.

The zone of risk identified in *Kelly* was the area located near the salad bar where the plaintiff's injury occurred. Id., 796. Salad bar customers frequently spilled lettuce onto the floor and thus created a zone of risk for grocery store patrons. Id., 774. Conversely, in *Konesky*, we held that there was no liability under the mode of operation rule because otherwise the entire establishment would be rendered a zone of risk, thus rendering the zone of risk requirement "superfluous." *Konesky* v. *Post Road Entertainment*, supra, 144 Conn. App. 143.

Under the circumstances before us, there is no identifiable zone of risk where the defendant should be on notice of continuous or inherently foreseeable hazards. The plaintiff contends that leashed animals should be considered "moving targets" and that the zone of risk should be construed as where the pet messes occurred. This simply does not comport with our understanding of the zone of risk requirement. Leashed animals are found throughout the store on a daily basis and adopting the plaintiff's position would render the entire store a zone of risk. Although we agree with the plaintiff that the zone of risk need not be limited to a precise, measurable area, some limitations are required. Here, nothing in the record suggests that the leashed pets preferred a particular area of the store, or that there was an area of the store where pet messes occurred frequently. Without specific proof of a particular zone of risk, we are unwilling to adopt the plaintiff's proposed standard.

In fact, the "moving target" theory raised by the plaintiff was discussed in *Konesky*, where patrons walked around the bar with cold drinks that dripped on the floor. *Konesky* v. *Post Road Entertainment*, supra, 144 Conn. App. 141. In *Konesky*, this court limited the zone of risk because "[i]f the mode of operation rule could be satisfied by [customers] carrying wet glasses, there would be no effective limitation on the application of the rule." Id., 144. Ultimately, the plaintiff's "moving target" theory fails for the same reasons; the zone of danger would encompass the entire store.

In sum, merely allowing a leashed pet into the defendant's store does not give rise to the conduct against which the rule intends to impose liability. See *Fisher* v. *Big Y Foods, Inc.*, supra, 298 Conn. 423. Proving actual or constructive notice of a hazard remains an element of a negligence action when a business is conducted in the ordinary manner of similar businesses, as here. Further, although the zone of risk need not be limited to a precisely measurable area, it cannot encompass the entire premises of a store. Finally, the rule requires foreseeable hazards, not merely possible ones. Pet messes are undoubtedly possible under a pet friendly mode of operation, but possibilities alone do not give rise to the type of regularly occurring or inherently foreseeable hazardous conditions required by the mode of operation rule.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The plaintiff raised three claims on appeal: (1) the court improperly held that the mode of operation rule did not apply at all on the facts of this case; (2) the court erroneously found that, even if the rule did apply, the plaintiff had not established a prima facie case of negligence under it; and (3) the court erroneously found that, even if the plaintiff had established prima facie negligence, the defendant rebutted it with evidence of reasonable precautions. In light of our resolution of the plaintiff's first claim, we need not address her second and third claims.

[2] Smith testified that "approximately one to two customers per week

would report a puddle" caused by a pet.

[3] In her appellate brief, the plaintiff cites an unpublished Washington case, *Depuy* v. *Petsmart*, 155 Wash. App. 1047 (Wash. Ct. App. 2010), for the proposition that it is instructive to the facts at issue. Notwithstanding the absence of any precedential value of the case in Connecticut, *Depuy* is categorically distinct from this case. The defendant in *Depuy* allowed pets into its store, but the pets roamed free without leashes. Further, the pets frequently knocked over wet floor signs and pet messes occurred at a substantially higher rate. The defendant's mode of operation diverged from the general operation of a pet store because it was aware of the hazards caused by its "autonomous pet" policy. The defendant operated its business in a way that invited customer carelessness and, as a result, regularly caused hazards. We do not find the case "instructive" as the plaintiff claims, nor does it assist us in understanding the rule's application.

[4] The trial court also noted that the mode of operation rule typically involves hazardous conditions "caused by the spilling or dropping of an item for sale that is already within the store." Because that particular claim was not squarely raised in this case, we do not reach the question of whether that distinction is legally relevant.

[5] The court noted that "the evidence demonstrated that there were only approximately one to two animal messes per week in the defendant's store and that the plaintiff's was the only incidence of a slip and fall in animal urine during [the store manager's] six years at the store."

————————————————