******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

ALICIA HILL *v.* OSJ OF BLOOMFIELD, LLC
(AC 42397)

DiPentima, C. J., and Moll and Bear, Js.*

*Syllabus*

The plaintiff, a business invitee of the defendant company, brought a premises liability action against the defendant, seeking damages for personal injuries she sustained when two empty boxes fell off a shelf and struck her in the head and shoulder as she was walking in an aisle of the defendant's store. After a trial to the court, the trial court rendered judgment for the plaintiff. The court applied the mode of operation rule enunciated in *Kelly* v. *Stop & Shop, Inc.* (281 Conn. 768), and concluded that the boxes fell and struck the plaintiff as a result of the defendant's negligence. The court determined that the store manager, M, and another employee, R, had been stocking merchandise in an adjacent aisle when a box on the top shelf of that aisle toppled over and into the boxes on the top shelf of the aisle in which the plaintiff was walking, thereby causing the boxes to fall off the shelf and onto the plaintiff. On appeal, the defendant claimed that the trial court improperly applied the mode of operation rule. *Held* that the evidence did not support the imposition of liability under the mode of operation rule or the affirmative act rule, under which proof of notice is not necessary because the defendant itself created the unsafe condition, as there was no evidence as to what caused the boxes to fall on the plaintiff: the plaintiff, relying on the mode of operation rule, failed to make out a prima facie case of negligence, as the record did not demonstrate that the defendant had a specific method of operation that was different from the general operation of a similar business, the only evidence about the regularity of any hazard came from M, who was unaware of merchandise ever falling onto a customer, the potential for which did not give rise to a regularly occurring or inherently foreseeable hazard, and the record was devoid of evidence that the plaintiff's injuries occurred within a limited zone of risk where the risk of injury was continuous or foreseeably inherent as a result of the mode of operation at issue; moreover, the evidence was insufficient to establish that an affirmative act on the part of the defendant caused the boxes to fall on the plaintiff, as M's testimony that neither he nor R touched the top shelf of the aisle in which they were working was not contradicted by any other evidence, there was no evidence that their actions in that aisle disrupted the boxes on the top shelf, and the court, even if it disbelieved M's statements, was not allowed to infer the opposite proposition, much less to infer that M and R negligently knocked over those boxes into the boxes that struck the plaintiff, and a photograph of the shelving that the plaintiff took following the incident was insufficient to permit an inference that M and R engaged in an affirmative act that led to the boxes falling on her.

Argued January 9—officially released September 15, 2020

*Procedural History*

Action to recover damages for the defendant's alleged negligence, brought to the Superior Court in the judicial district of Hartford and tried to the court, *Gordon, J.*; judgment for the plaintiff, from which the defendant appealed to this court. *Reversed; judgment directed.*

*Bruce H. Raymond*, with whom was *Evan K. Buchberger*, for the appellant (defendant).

*Domenic D. Perito*, with whom, on the brief, was *Richard E. Joaquin*, for the appellee (plaintiff).

*Opinion*

MOLL, J. "Drawing logical deductions and making reasonable inferences from facts in evidence, whether that evidence be oral or circumstantial, is a recognized and proper procedure in determining the rights and obligations of litigants, but to be logical and reasonable they must rest upon some basis of definite facts, and any conclusion reached without such evidential basis is a mere surmise or guess." (Internal quotation marks omitted.) *Paige* v. *St. Andrew's Roman Catholic Church Corp.*, 250 Conn. 14, 34, 734 A.2d 85 (1999). This important principle lies at the heart of this premises liability appeal. The defendant, OSJ of Bloomfield, LLC, doing business as Ocean State Job Lot, appeals from the judgment of the trial court, rendered after a bench trial, in favor of the plaintiff, Alicia Hill, for injuries she sustained when two empty cardboard boxes fell onto her head and shoulder from the top shelf of the aisle she was browsing. On appeal, the defendant claims that the trial court (1) improperly applied the mode of operation rule as a basis for finding the defendant liable in negligence, and (2) erroneously found that the defendant's merchandise stacking methods caused the boxes to fall on the plaintiff.[1] The plaintiff argues that the judgment should be affirmed because she proved her premises liability claim under the affirmative act rule. We conclude that the evidence adduced at trial does not support the imposition of liability on the basis of the mode of operation rule or the affirmative act rule. Accordingly, we reverse the judgment of the trial court and remand the case with direction to render judgment for the defendant.

The trial court's memorandum of decision sets forth the following recitation, which is relevant to our resolution of this appeal. "The plaintiff testified that [on July 1, 2015] she was walking down the stationery aisle of the [defendant's] store when two empty boxes fell off of a shelf to her right and struck her in the head and right shoulder. [Devin] Gordon, [another shopper in the store], testified that he was in the same aisle and saw the boxes fall off the shelf and strike the plaintiff. The plaintiff testified that prior to the boxes falling on her, she saw two employees of the defendant stocking merchandise in the Internet coupon aisle directly adjacent to the stationery aisle. [The defendant's store manager, Aron Moore] admitted that he and another employee were stocking merchandise in the Internet coupon aisle in the moments preceding the incident, and that as soon as they heard a loud noise, they entered the stationery aisle where they saw the plaintiff and Gordon, who was holding one of the boxes.

"Moore testified that the top shelf of the Internet coupon aisle is seven feet tall and is used as a 'profile shelf' to hold overstocked merchandise. According to Moore, the top shelf of the Internet coupon aisle is

twelve inches wide and six inches higher than the top shelf of the stationery aisle. The plaintiff introduced a photograph that she took within minutes of the accident showing the top shelves of the stationery aisle and the Internet coupon aisle. The photograph shows a series of boxes containing nine inch fans stacked one on top of the other on the top shelf of the Internet coupon aisle. The photograph also shows one of the boxes containing the nine inch fans hanging over the box below it and cantilevered in the direction of the stationery aisle. The [photograph] also shows a gap in the top row of stacked nine inch fans in a location directly adjacent to the top shelf of the stationery aisle where the empty boxes had been displayed immediately before they fell. The [photograph] also shows one of the nine inch fan boxes in this precise location."

On June 13, 2017, the plaintiff commenced this action, alleging that she sustained injuries to her head, neck, and right shoulder as a result of the boxes falling onto her and that the incident was caused by the negligence of the defendant. On November 8, 2018, the case was tried to the court. Three witnesses testified: Moore (the store manager), Gordon (the eyewitness), and the plaintiff. Thereafter, the parties submitted posttrial briefs. On December 7, 2018, the trial court issued a memorandum of decision rendering judgment in favor of the plaintiff. Setting forth the principles from this court's decision in *Meek* v. *Wal-Mart Stores, Inc.*, 72 Conn. App. 467, 806 A.2d 546, cert. denied, 262 Conn. 912, 810 A.2d 278 (2002), the court concluded that the plaintiff "sustained her burden of proving by a fair preponderance of the evidence that the empty display boxes fell and struck the plaintiff as a result of the defendant's negligence." Specifically, the court found that "Moore and another employee of the defendant were stocking merchandise in the Internet coupon aisle when one of the nine inch fan boxes on the top shelf of the Internet coupon aisle toppled over and into the display boxes on the top shelf of the stationery aisle, thereby causing the display boxes to fall off the shelf and onto the plaintiff." The court awarded the plaintiff $23,001.96 in past medical expenses and $7500 for pain and suffering for a total of $30,501.96 in damages. This appeal followed. Additional facts will be set forth as necessary.

The defendant principally claims on appeal that the trial court improperly applied the mode of operation rule in finding the defendant liable. Specifically, the defendant maintains that the record is devoid of any evidence that (1) the defendant employed a particular mode of operation that is distinct from a similar business, (2) such mode of operation created a regularly occurring or inherently foreseeable hazard, and (3) the plaintiff's injury occurred within a limited zone of risk. We agree with the defendant and conclude that the evidence at trial did not support the application of the mode of operation rule.

We begin with the standard of review and general principles of premises liability. "[T]he scope of our appellate review depends [on] the proper characterization of the rulings made by the trial court. To the extent that the trial court has made findings of fact, our review is limited to deciding whether such findings were clearly erroneous. When, however, the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Kelly* v. *Stop & Shop, Inc.*, 281 Conn. 768, 776, 918 A.2d 249 (2007). "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Lyme Land Conservation Trust, Inc.* v. *Platner*, 325 Conn. 737, 755, 159 A.3d 666 (2017). "In a case tried before a court, the trial judge is the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony. . . . On appeal, we will give the evidence the most favorable reasonable construction in support of the verdict to which it is entitled." (Internal quotation marks omitted.) *Coppedge* v. *Travis*, 187 Conn. App. 528, 532, 202 A.3d 1116 (2019).

"A business owner owes its invitees a duty to keep its premises in a reasonably safe condition. . . . In addition, the possessor of land must warn an invitee of dangers that the invitee could not reasonably be expected to discover. . . . Nevertheless, [f]or [a] plaintiff to recover for the breach of a duty owed to [her] as [a business] invitee, it [is] incumbent upon [her] to allege and prove that the defendant either had actual notice of the presence of the specific unsafe condition which caused [her injury] or constructive notice of it. . . . [T]he notice, whether actual or constructive, must be notice of the very defect which occasioned the injury and not merely of conditions naturally productive of that defect even though subsequently in fact producing it. . . . In the absence of allegations and proof of any facts that would give rise to an enhanced duty . . . [a] defendant is held to the duty of protecting its business invitees from known, foreseeable dangers."[2] (Citations omitted; internal quotation marks omitted.) *DiPietro* v. *Farmington Sports Arena, LLC,* 306 Conn. 107, 116–17, 49 A.3d 951 (2012). As this court recently explained, to succeed in a traditional negligence action that is based on premises liability, "the plaintiff must prove (1) the existence of a defect, (2) that the defendant knew or in the exercise of reasonable care should have known about the defect and (3) that such defect had existed for such a length of time that the [defendant] should, in the exercise of reasonable care, have discovered it in time to remedy it." (Internal quotation marks omitted.)

*Bisson* v. *Wal-Mart Stores, Inc.*, 184 Conn. App. 619, 628, 195 A.3d 707 (2018).

There exist at least two circumstances, however, in which a plaintiff, as a business invitee, may recover in a premises liability case without proof that the business had actual or constructive notice of a dangerous condition alleged to have caused the plaintiff injury. In connection with the first exception, in *Kelly* v. *Stop & Shop, Inc.*, supra, 281 Conn. 768, our Supreme Court adopted "the so-called 'mode of operation' rule, a rule of premises liability pursuant to which a business invitee who is injured by a dangerous condition on the premises may recover without proof that the business had actual or constructive notice of that condition if the business' chosen mode of operation creates a foreseeable risk that the condition regularly will occur and the business fails to take reasonable measures to discover and remove it."[3] Id., 769–70. Under the mode of operation rule, "a plaintiff establishes a prima facie case of negligence upon presentation of evidence that the mode of operation of the defendant's business gives rise to a foreseeable risk of injury to customers and that the plaintiff's injury was proximately caused by an accident within the zone of risk. The defendant may rebut the plaintiff's evidence by producing evidence that it exercised reasonable care under the circumstances. Of course, the finder of fact bears the ultimate responsibility of determining whether the defendant exercised such care. We underscore, as most other courts have, that the defendant's burden in such cases is one of production, and that the ultimate burden of persuasion to prove negligence—in other words, that the defendant failed to take reasonable steps to address a known hazard—remains with the plaintiff." (Internal quotation marks omitted.) Id., 791–92.

On at least two occasions following our Supreme Court's decision in *Kelly*, our appellate courts have clarified the parameters of the mode of operation rule. First, shortly after *Kelly*, our Supreme Court refined its adoption of the rule, stating that "the exception is meant to be a narrow one . . . ." *Fisher* v. *Big Y Foods, Inc.*, 298 Conn. 414, 437, 3 A.3d 919 (2010). Specifically, in *Fisher*, the court clarified that "the mode of operation rule, as adopted in Connecticut, does not apply generally to all accidents caused by transitory hazards in self-service retail establishments, but rather, only to those accidents that result from particular hazards that occur regularly, or are inherently foreseeable, due to some specific method of operation employed on the premises." Id., 423. Stated differently, "self-service merchandising itself" does not fall under the mode of operation rule. Id., 424. The rule applies only to specific areas of an establishment where the risk of injury is continuous or foreseeably inherent by virtue of the nature of the business or mode of operation. Id., 437. "Notably, [our Supreme Court] included the requirement that a plain-

tiff's injury occur within a 'zone of risk.' . . . If a 'mode of operation' could be self-service merchandising itself, then an entire store necessarily would be rendered a 'zone of risk' due to the readily established fact that merchandise, as a general matter, sometimes falls and breaks. Accordingly, the requirement of establishing that an injury occurred within some 'zone of risk' essentially would be rendered superfluous." (Citation omitted.) Id., 424.

Second, in *Konesky* v. *Post Road Entertainment*, 144 Conn. App. 128, 72 A.3d 1152, cert. denied, 310 Conn. 915, 76 A.3d 630 (2013), this court clarified that the mode of operation rule requires not only an identifiable zone of risk but also a business mode of operation that is appreciably different from that of a similar business. Id., 144. Applying these principles, in *Konesky*, this court rejected the proposition that a plaintiff, who was injured after she slipped and fell on a puddle of water created from " 'beer tub[s]' " used by a nightclub to serve chilled beer, could prevail under the mode of operation rule. Id., 142–43. This court reasoned that the defendant's "service of beer" did not constitute "an inherently hazardous mode of operation" because "the entire [premises] would become a zone of risk simply because drinks do sometimes spill or otherwise produce slippery surfaces." (Internal quotation marks omitted.) Id., 143. The court explained that such an expansive zone of risk "would be inconsistent with the Supreme Court's admonition that the mode of operation rule is meant to be a narrow exception to the notice requirements under traditional premises liability law." Id., 143–44.

As a result of those clarifications, this court has distilled three requirements for the mode of operation rule to apply: "(1) the defendant must have a particular mode of operation distinct from the ordinary operation of a related business; (2) that mode of operation must create a regularly occurring or inherently foreseeable hazard; and (3) the injury must happen within a limited zone of risk." *Porto* v. *Petco Animal Supplies Stores, Inc.*, 167 Conn. App. 573, 581, 145 A.3d 283 (2016). We return to these requirements subsequently in this opinion.

The second exception to the requirement in a premises liability case that a business invitee must prove that the business had actual or constructive notice of a dangerous condition alleged to have caused the plaintiff injury is the affirmative act rule. "Under an affirmative act theory of negligence, if the plaintiff alleges that the defendant's conduct *created* the unsafe condition [on the premises], proof of notice is not necessary. . . . That is because when a defendant itself has created a hazardous condition, it safely may be inferred that [the defendant] had knowledge thereof." (Emphasis added; internal quotation marks omitted.) *DiPietro* v. *Farmington Sports Arena, LLC*, supra, 306 Conn. 122.

"Rather than acting as an alternative to notice, the affirmative act rule allows an inference of notice when circumstantial evidence shows that the defendant knew or should have known of the dangerous condition because it was a foreseeably hazardous one that the defendant itself created." Id., 124. Although closely related, affirmative act cases involving injuries from negligently displayed merchandise are principally distinguishable from mode of operation cases in that the injury in an affirmative act case "is not triggered by an intervening customer's act." Id., 122 n.10. "Analysis of the affirmative act rule as it has been applied shows that it permits the inference of actual notice only when the defendant or its employees created an obviously hazardous condition." Id., 123; see, e.g., *Tuite* v. *Stop & Shop Cos.*, 45 Conn. App. 305, 308, 696 A.2d 363 (1997) (slip and fall case in which employee left water in supermarket aisle after watering plants); *Fuller* v. *First National Supermarkets, Inc.*, 38 Conn. App. 299, 301–303, 661 A.2d 110 (1995) (slip and fall case in which employees left pricing stickers on floor).

At this juncture, we pause to observe the following with regard to the liability theory on which the plaintiff proceeded. First, our careful review of the record reveals that at no time did the plaintiff explicitly state before the trial court that she was seeking to establish the defendant's negligence on the basis of traditional premises liability doctrine, the mode of operation rule, or the affirmative act rule. During trial and in the plaintiff's posttrial brief, the plaintiff focused almost exclusively on *Meek* v. *Wal-Mart Stores, Inc.*, supra, 72 Conn. App. 467, claiming that the *Meek* decision is "on all fours" with the present case. Our Supreme Court expressly has recognized *Meek* as a case applying the mode of operation rule; see footnote 3 of this opinion; see also *Kelly* v. *Stop & Shop, Inc.*, supra, 281 Conn. 785 ("[a]lthough the Appellate Court did not expressly adopt the mode of operation rule in *Meek*, the analysis and reasoning employed in that case is no different from the analysis and reasoning that the court would have used it if explicitly had adopted the mode of operation rule"). Thus, by relying, essentially exclusively, on this court's decision in *Meek*, we conclude that the plaintiff was proceeding under the mode of operation rule. Second, the trial court did not explicitly state whether it was finding in the plaintiff's favor on the basis of traditional premises liability principles, the mode of operation rule, or the affirmative act rule, and the trial court's memorandum of decision similarly is limited to a discussion of *Meek*. Here, too, in light of the trial court's exclusive reliance on *Meek*, we conclude that the trial court was applying the mode of operation rule in its liability finding against the defendant. Accordingly, we begin our analysis by considering the applicability of the mode of operation rule.[4]

Our review of the evidence presented at trial, viewed

in the light most favorable to the plaintiff, reveals that the evidence did not support the application of the mode of operation rule. We address each requirement of the mode of operation rule with dispatch because, notably, the plaintiff does not contend in her appellate brief that the mode of operation rule was satisfied. *First*, there was no evidence that the defendant employed a particularized mode of operation with respect to the stacking of the fans or the empty cardboard boxes (1) that was distinct from the ordinary operation of a related business and (2) that either resulted in a regularly occurring hazardous condition or rendered some hazardous condition inherently foreseeable. See *Konesky* v. *Post Road Entertainment*, supra, 144 Conn. App. 144. In addition, as stated previously in this opinion, "self-service merchandising itself" cannot be a negligent mode of operation. *Fisher* v. *Big Y Foods, Inc.*, supra, 298 Conn. 424. Here, the record simply does not demonstrate a specific method of operation that is different from the general operation of a similar business. See *Porto* v. *Petco Animal Supplies Stores, Inc.*, supra, 167 Conn. App. 582 (concluding that first requirement was not met where defendant operated as any other pet store would by permitting leashed animals into store). *Second*, "the store's mode of operation [must invite] careless customer interference, creating an expected, foreseeable hazard." Id. Here, the only evidence about the regularity of any hazard came from Moore, who explained that he was unaware of merchandise ever falling onto a customer. Furthermore, even where there is a potential for hazard, "that potential alone does not give rise to a regularly occurring or inherently foreseeable hazard." Id., 583. *Third*, the mode of operation rule applies only to "those areas where risk of injury is continuous or foreseeably inherent" as a result of the mode of operation at issue. (Internal quotation marks omitted.) *Fisher* v. *Big Y Foods, Inc.*, supra, 437. In the present case, the record is devoid of evidence that the plaintiff's alleged injuries occurred within a *limited* zone of risk.[5] We also note at this juncture that the photograph of the shelving taken shortly after the incident, on which the trial court relied as described previously in this opinion, does not provide a sufficient evidential basis for any of these requirements.

In short, there was simply *no* evidence as to what caused the empty cardboard boxes to fall on the plaintiff (i.e., whether they had been stacked improperly by an employee of the defendant, whether the fans had been negligently stacked or handled in a manner that caused one or more of them to fall into the empty cardboard boxes that in turn fell on the plaintiff, and/or whether another customer had interfered with the placement of any of the foregoing merchandise leading to the incident at issue).[6]

In sum, the plaintiff failed to make out a prima facie

case of negligence under the mode of operation rule and, as stated previously, she does not contend otherwise in her appellate brief. Instead, she asserts that the judgment should be affirmed on the basis of the affirmative act rule.[7]

Specifically, the plaintiff contends that there were two affirmative acts that support the court's conclusion: (1) the stacking of the fan boxes in a precarious manner, and (2) the defendant's employees moving merchandise in the adjacent aisle. The defendant argues that the court did not actually find that any affirmative act on the part of the defendant's employees caused the boxes to fall onto the plaintiff and that there was no evidence to support such a finding in any event. We agree with the defendant.

As an initial matter, we begin with the relevant language from the trial court's decision: "Moore and another employee of the defendant were stocking merchandise in the Internet coupon aisle when one of the nine inch fan boxes on the top shelf of the Internet coupon aisle toppled over and into the display boxes on the top shelf of the stationery aisle, thereby causing the display boxes to fall off the shelf and onto the plaintiff." A careful reading of the foregoing finding reveals that the trial court did not in fact make a finding that connects, other than temporally, the employees' activity in the Internet coupon aisle to the fall of the display boxes.

Even if such language could be construed, however, to reflect a finding of an affirmative act on the part of the defendant's employees that caused the empty cardboard boxes to fall on the plaintiff, the evidence presented at trial, viewed in the light most favorable to the plaintiff, was insufficient to support it. As stated previously in this opinion, three witnesses testified. Gordon, the sole eyewitness, testified that he saw two boxes fall from the top shelf of the stationery aisle onto the plaintiff, who was pushing a shopping carriage at the time, not reaching for or touching any merchandise on the shelving, and remained standing. With regard to any activity taking place in the adjacent aisle, Gordon testified that two male employees of the store had passed him, and he heard them talking in the adjacent aisle. He did not know why the boxes fell.

Moore, the store manager, testified that, on the day of the incident, he was training another employee, Kevin Reilly. Moore explained that he and Reilly were "[r]esetting" the Internet coupon aisle (i.e., the location in the store where items advertised for sale through the Internet are displayed).[8] Moore unequivocally testified that this "[r]esetting" activity did not involve merchandise on the top shelves; in Moore's words, "we don't touch the top shelves." He explained that the top shelf of the Internet coupon aisle did not contain merchandise that was taken on and off because it was a main

aisle of the store and that it was used to display product that looked more appealing than so-called "top stock," meaning extra merchandise used to continuously refill the aisles. Moore testified that he and Reilly were working in the Internet coupon aisle when they heard an unidentified sound in the stationery aisle and went around the corner, encountering the plaintiff and Gordon, who said that the boxes fell from the top shelf. Moore further testified that the "home location" of the empty cardboard boxes was the top shelf of the stationery aisle, which was approximately six and one-half feet tall and intentionally accessible to customers interested in interacting with the merchandise for sale. He could not explain how the boxes fell onto the plaintiff.

The plaintiff also testified in part as follows. Just prior to her arrival at the stationery aisle, she passed the Internet coupon aisle and saw two employees stocking merchandise there. Once in the stationery aisle, the plaintiff did not see the display boxes before they fell, nor did she see any employee handling the display boxes that fell. The plaintiff testified that the display boxes "flew off [the shelf] by themselves."

The evidence presented at trial, viewed in the light most favorable to the plaintiff, was insufficient to establish that an affirmative act on the part of the defendant caused the empty boxes to fall on the plaintiff. Moore's testimony that neither he nor Reilly ever touched the top shelf of the Internet coupon aisle was not contradicted by any other evidence. Although the court reasonably could find that Moore and Reilly were resetting the Internet coupon aisle at the time of the incident on the basis of the plaintiff's observations of two men stocking shelves just prior to the incident, there was no evidence to suggest that their specific actions in that aisle disrupted the fan boxes on the top shelf. Finding a negligent act on their part required the court to engage in impermissible speculation. Although the court was free to disbelieve Moore's testimony regarding the Internet coupon aisle's top shelf, it was not permitted to "draw a contrary inference on the basis of that disbelief." *Paige* v. *St. Andrew's Roman Catholic Church Corp.*, supra, 250 Conn. 18; see also *Novak* v. *Anderson*, 178 Conn. 506, 508, 423 A.2d 147 (1979). Therefore, Moore's uncontested statements that neither he nor Reilly handled the fan boxes on the top shelf of the aisle they were resetting—even if disbelieved—did not allow the court to infer the opposite proposition, much less infer that they negligently knocked over those boxes into the display boxes, which ultimately struck the plaintiff.[9] Moreover, the photograph of the shelving following the incident, on which the trial court relied in finding the defendant negligent, is insufficient to permit an inference that the defendant's employees engaged in an affirmative act that led to the display boxes falling on the plaintiff.

The judgment is reversed and the case is remanded with direction to render judgment for the defendant.

In this opinion the other judges concurred.

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

[1] Because we consider these claims to be analytically related, we address them together.

[2] The parties do not dispute that the plaintiff was a business invitee of the defendant.

[3] As part of its analysis, the court stated that "in *Meek* v. *Wal-Mart Stores, Inc.*, supra, 72 Conn. App. 476–79, the Appellate Court recently employed a mode of operation analysis in the context of a claim arising out of the alleged negligence of a large, self-service department store." *Kelly* v. *Stop & Shop, Inc.*, supra, 281 Conn. 783.

[4] We also note that, at the commencement of trial, the trial court suggested, sua sponte, that the doctrine of res ipsa loquitur might apply. The trial court's decision does not address res ipsa loquitur, nor do the parties' appellate briefs. Thus, we do not address it further.

[5] In addition, the mode of operation rule, as it exists under Connecticut law, presumes that there was some customer interference. See *Kelly* v. *Stop & Shop, Inc.*, supra, 281 Conn. 786–90; *Konesky* v. *Post Road Entertainment*, supra, 144 Conn. App. 141–42 n.11. Here, the plaintiff does not contend, and there was no evidence presented to suggest, that another customer interfered with the fans or empty cardboard boxes at all. Thus, the court's application of the mode of operation rule in this case was flawed for this independent reason. See *Konesky* v. *Post Road Entertainment*, supra, 144.

[6] Instead, Moore testified to the following. At some point immediately prior to the incident, Moore and another store employee, Kevin Reilly, had completed a safety walk, whereby they inspected the condition of various aisles in the store and discovered no hazards of any sort. No concern had ever been raised with respect to the display of the boxes that struck the plaintiff. Moreover, the shelving did not easily move, and bumping into the shelving in one aisle would not cause something to happen in the adjacent aisle.

[7] Although the plaintiff did not expressly rely on the affirmative act rule at trial, we nonetheless exercise our discretion to consider the merits of her argument, which we treat as an alternative ground for affirmance.

[8] Moore explained that "[r]esetting" the Internet coupon aisle meant removing merchandise from the shelves and replacing it with new merchandise.

[9] Affirmative act cases from other jurisdictions involving circumstances that are factually similar to the present case bolster our conclusion. The Supreme Court of South Carolina considered whether the evidence was sufficient to support the conclusion that the defendant store created a dangerous condition when the plaintiff, shortly after removing two cans from a shelf, was struck in the face by approximately fifteen falling cans. See *Garvin* v. *Bi-Lo, Inc.*, 343 S.C. 625, 627–28, 541 S.E.2d 831 (2001). The court explained that the only evidence produced by the plaintiff related to the cans' selling price and reflected that the cans were stacked in their original boxes and above the plaintiff's height. Id., 628. That evidence was insufficient as matter of law to establish that the defendant had created a dangerous condition because nothing indicated that the goods were defectively stacked, or that the defendant knew of any such defect. Id., 628–29; see also *Vallot* v. *Logan's Roadhouse, Inc.*, 567 Fed. Appx. 723, 726 (11th Cir. 2014) (restaurant patron who slipped and fell on liquid could not prevail in negligence action because evidence did not demonstrate that defendant knew of liquid or caused spill). In *Metts* v. *Wal-Mart Stores, Inc.*, 269 Ga. App. 366, 367, 604 S.E.2d 235 (2004), the plaintiff was injured when a number of boxes containing metal shelving units fell onto her from a display rack. The plaintiff did not know what caused the boxes to fall, nor did she observe any employees nearby. Id. The plaintiff produced no evidence with respect to the boxes' positioning prior to their fall. Id., 367–68. The court concluded that the defendant had no knowledge of the hazard because the evidence revealed that the boxes were stacked properly, and a safety inspection approximately fifteen minutes prior to the accident revealed no defect. Id., 367. Therefore, the court concluded that the defendant could not be held liable on the basis of any affirmative act.