Cordy, J.
(dissenting, with whom Spina and Lenk, JJ., join). I disagree with what I believe is an overly broad expansion of the heretofore narrowly applicable mode of operation approach to premises liability. Because the defendant’s chosen method of operation — a “gravel area” located adjacent to an outdoor self-service portico[1] — does not regularly invite third-party interference in any way previously recognized by this court as an exception to traditional premises liability, and because I agree with the court that the plaintiffs claim fails under the traditional approach, ante at 38, I respectfully dissent. In my opinion, the order allowing the motion for summary judgment should be affirmed.
Massachusetts has “[hjistorically . . . followed the traditional approach governing premises liability.” Sheehan v. Roche Bros. Supermkts., Inc., 448 Mass. 780, 783 (2007). Under that approach, a store owner is required to maintain his or her property “in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to others, the seriousness of the injury, and the burden of avoiding the risk” (citation omitted). Id. at 783-784. “[Tjhe law has afforded store owners a reasonable opportunity to discover and correct any hazards before liability attaches.” Id. at 784. We have thus held that, unless an exception to the general rule applies, “premises liability attaches only if a store owner has actual or constructive notice of the existence of the dangerous condition, sufficient to allow time for the owner to remedy the condition.” Id.
In Sheehan, we adopted one such exception, the “mode of operation” approach to premises liability, id. at 788, subsequently *44 expanded in Sarkisian v. Concept Restaurants, Inc., 471 Mass. 679, 684-685 (2015), applicable “to situations where a business should reasonably anticipate that its chosen method of operation will regularly invite third-party interference resulting in the creation of unsafe conditions, and a visitor suffers an injury after encountering the condition so created.” Rather than supplanting the traditional approach entirely, the mode of operation approach was adopted to “refine[ ] the Restatement’s notice requirement in a narrow subset of premises liability cases,” only applying under “circumstances in which strict application of the traditional approach’s notice requirement [would] produce unjust results.” Id. at 682-683.
The exception was intended to be narrow because, as we have observed in the past, “ ‘nearly every business enterprise produces some risk of customer interference,’ and, in the absence of limiting principles, ‘[a] plaintiff could get to the jury in most cases simply by presenting proof that a store’s customer could have conceivably produced the hazardous condition.’ ” Id. at 684, quoting Chiara v. Fry’s Food Stores of Ariz., Inc., 152 Ariz. 398, 400-401 (1987). As a result, Massachusetts courts have routinely applied two limiting principles in considering whether to subject a given case to the mode of operation approach, both of which dictate a dismissal in the present case.
First, Massachusetts courts have, until now, applied the mode of operation approach exclusively in “spillage and breakage” cases, and those in which a customer is injured by a product or item either for sale on the premises or contemplated to be carried around the business. See, e.g., Sarkisian, 471 Mass. at 682 (spilled drinks); Sheehan, 448 Mass. at 781-782 (spilled grape). The hallmark of our mode of operation approach is that customers interacting with products for sale “may not be as careful and vigilant as a store owner.” Sheehan, supra at 784-785. Implicit in that concept is the assumption that business owners, by virtue of their method of operation, should be liable when their customers are negligent in relation to the products that were traditionally only handled by store owners and store employees. See id. at 784 (store owners are “thus require [d] ... to use a degree of care commensurate with the risks involved”). This distinction is a practical one; an employer should not be expected reasonably to detect or protect against the spillage of products not for sale or intended to be picked up and carried by third parties.
Indeed, all of the cases cited by the court (as well as those on which we relied in adopting the mode of operation approach in *45 Sheehan) concern injuries that stemmed from items that the purveyor invited and intended third parties to pick up and carry around the establishment, resulting in an injury when third parties caused such items to spill or break. Such a limitation ensures, as we have emphasized, that the mode of operation approach, otherwise allowing the substitution of reasonable anticipation in lieu of traditional premises liability’s notice requirement, “does not make the owner of a self-service . . . store an insurer against all accidents.” Id. at 790. In contrast to those cases, the object on which the plaintiff was injured in the present case was not offered for sale by the defendant, nor could it have rationally been contemplated as something that would be carried around by third parties.
Second, an injured plaintiff is required to demonstrate a causal nexus between the defendant’s method of operation and the dangerous condition that allegedly led to his or her injury. See, e.g., Sarkisian, 471 Mass. at 684, 687; Sheehan, 448 Mass. at 781-782, 786 (mode of operations approach’s application limited to “reasonably foreseeable dangerous condition[s] on the owner’s premise that [are] related to the owner’s self-service mode of operation” [emphasis added]). See also Curet v. Walgreens Co., 85 Mass. App. Ct. 1119 (2014). The object causing the injury must not only be one that the business owner invited the customer to carry around the store, but also be on the premises because of the business owner’s self-service operation.
The fact that the defendant’s customers were allowed to use the gravel strip in question to enter the self-service area of the store does not turn this case into a mode of operation inquiry akin to anything any appellate court in Massachusetts, or anywhere else in the country, has deemed appropriate for a mode of operation inquiry. The customers’ ability to help themselves to goods, as opposed to being assisted by store employees, did not factor into the condition at issue here. See Tavernese v. Shaw’s Supermkts., Inc., 72 Mass. App. Ct. 1107 (2008). Indeed, “there was simply no evidence that the presence of [the river stone] on the [sidewalk] was in any way connected to [the defendant’s] self-service mode of operation.” Curet, supra.
My concern is that the court’s expansion of the mode of operation approach to include claims like that in the present case unnecessarily widens the scope of liability for business owners without any reasonable opportunity to discover and correct potentially dangerous conditions. The defendant was not inviting *46 third parties to interact with the gravel area in question in any way other than as a potential ingress and egress to and from the portico. Put another way, had the exterior design of the defendant’s store been the exact same, absent any products displayed outside, an injury caused by a meandering river stone absolutely would be considered under our traditional premises liability jurisprudence. See, e.g., Oliveri v. Massachusetts Bay Transp. Auth., 363 Mass. 165, 166 (1973).
The court’s holding ostensibly opens up any architectural decision made by self-service retail store owners to an application of the mode of operation approach: If a customer is injured in the parking lot of a self-service establishment, was the type of cement used part of the property owner’s method of operation? If a customer of a supermarket trips on exposed linoleum flooring, is the surface part of the property owner’s method of operation? In my opinion, the traditional premises liability test remains the accepted jurisprudence for determining such disputes, even for self-service retailers, except under narrow circumstances not present in this case. See, e.g., Jasko v. F. W. Woolworth Co., 177 Colo. 418, 420 (1972) (approach not triggered by self-service alone, but by specific “method of sale”: “practice of extensive selling of slices of pizza on waxed paper to customers who consume it while standing creates the reasonable probability that food will drop to the floor”); Fisher v. Big Y Foods, Inc., 298 Conn. 414, 426-427 (2010) (concluding that mode of operations approach is not triggered by self-service alone but rather by “[an] additional showing that a more specific method of operation within a self-service retail environment gave rise” to dangerous condition); Pimentel v. Roundup Co., 100 Wash. 2d 39, 49-50 (1983) (declining to adopt rule that notice requirement is eliminated as matter of law for self-service establishments, while concluding approach applies only “if the particular self-service operation of the defendant is shown to be such that the existence of unsafe conditions is reasonably foreseeable”). The court’s holding substantially and unrecognizably expands our limited exception from traditional premises liability, such that the exception threatens to swallow the rule entirely.
For the foregoing reasons, I conclude that the grant of summary judgment to the defendant here was warranted. See Mullins v. Pine Manor College, 389 Mass. 47, 56 (1983).

 What items were for sale at the self-service section of the portico on the day on which the defendant fell is not clear from the record. The plaintiff testified that, before her fall, she was distracted by a hir'd bath. The photograph that is part of the record displays large stone and clay hir'd baths. While not necessary to my conclusion, I note only that heavy objects such as bird baths, though seemingly part of a self-service operation, are not properly characterized as self-service items if employee assistance is required in their' purchase.