NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-276

MAUREEN E. GREEN

vs.

MARYPAULA BRESNAHAN.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The parties, Maureen E. Green and Marypaula Bresnahan, own abutting properties.  When Green decided to remove a fence she thought was on her property, a survey showed that the fence was actually on Bresnahan's property.  Relations became acrimonious, and Green filed a complaint in the Superior Court; Bresnahan filed a counterclaim.  As we discuss in detail below, on the eve of trial, Green's attorney notified the clerk of the Superior Court that the parties had reached a settlement agreement. Consequently, the case was removed from the trial list.  The parties continued negotiations, which ultimately broke down. Green then filed a motion to restore the case to the trial list, which was denied, and Bresnahan filed a "motion to enforce

settlement agreement," which was allowed.  Green's motions for reconsideration also were denied.  This appeal ensued.  We affirm in part, vacate in part, and remand the matter for further proceedings.

Background.  The trial of this matter was scheduled to commence on December 6, 2021.  At around 5:21 P.M., on December 5, 2021, Green's attorney sent an e-mail message to Bresnahan's attorney stating that it was his "understanding that [they had] reached a settlement."  Around an hour later, Green's attorney sent an e-mail message to the clerk of the Superior Court, copying Bresnahan's attorney in the "Cc" field of the message, stating he was "please[d] to report that [the parties] agreed to a settlement around 3:30 P.M. today."  The structure of the settlement was to be (1) a settlement agreement and (2) a license agreement whereby Bresnahan was to install a new fence substantially on the line of the pre-existing fence that existed as of 2016, along with an agreement of permitted and prohibited uses of the area on Green's side of the fence.

At 6:52 P.M. Bresnahan's attorney responded to Green's attorney's e-mail message with edits to the settlement agreement and stated he "fully intend[s] to finalize this evening"; he also stated he would send the license agreement.  At 9:41 P.M., Green's attorney returned the draft settlement agreement to Bresnahan's attorney with edits, and said he would be available

2

to discuss the changes until 11 P.M. At 11:05 P.M., Bresnahan's attorney sent a license agreement to Green's attorney for review and stated in the e-mail message that he wanted to discuss two of Green's proposed changes to the settlement agreement. Among other changes, the new version of the license agreement provided for: (1) unilateral attorney's fees for Bresnahan should she need to "file an equitable action or declaratory judgment" to enforce the license agreement, (2) a provision stating that the license agreement shall be terminated if either party records the agreement with the Barnstable County Registry of Deeds,[1] (3) a provision that disallowed any object "to come in contact" with Bresnahan's fence, and (4) a new, delayed date for when the fence would be installed.

At 8:30 A.M. the following morning, having not received a reply e-mail message from the clerk, Green's attorney called the clerk's office at the Superior Court to confirm that the case had settled. As detailed at oral argument, prior to calling the clerk that morning, Green's attorney was "probably aware" that he received an e-mail message from Bresnahan's attorney, but had not opened it or reviewed the license agreement prior to

---

[1] We note that this provision appears to have been in a previous version of the agreement as well, though Green's counsel represents that it was rejected. This is a factual matter to be resolved on remand.

3

contacting the court. That same day, an order of dismissal nisi was entered, directing the parties to file an agreement for judgment or stipulation of dismissal by January 14, 2022.

The parties engaged in additional negotiations throughout the month of December. Both attorneys made suggestions and edits to the license agreement and the settlement agreement. Despite the extended negotiations, the parties never executed any agreements.

After the nisi period had expired, Green filed a motion to restore the case to the trial list, which was denied on April 6, 2022. The judge further ruled that "[e]ither or both parties may file a motion to enforce settlement." Green then filed a motion for reconsideration, and a nonevidentiary hearing was held on February 13, 2023. On the day of the hearing, Bresnahan filed a motion to enforce the license and settlement agreements as they existed at 11:05 P.M. on December 5, 2021. As previously noted, Bresnahan's motion to enforce that version of the settlement agreement was allowed and Green's motion for reconsideration was denied. Green filed a motion for reconsideration of the allowance of the motion to enforce the full settlement agreement, which was denied on May 22, 2023.

On May 31, 2023, Green filed a notice of appeal that sought review of the initial April 6, 2022 order denying her motion to restore the case to the trial list; the March 16, 2023 order

4

denying her motion to reconsider her motion to restore to the trial list; the March 16, 2023 order allowing Bresnahan's motion to enforce the settlement agreement; and the May 22, 2023 order denying Green's motion for reconsideration of the settlement enforcement order. Bresnahan then filed a motion to dismiss Green's appeal, which was denied. The judge concluded that the orders identified in the notice of appeal could be taken together as the last acts before judgment should have entered. The judge entered a final judgment on July 26, 2023, noting that the settlement agreement and license agreement "as they existed as of 11:05 P.M. on 12/05/2021 represent the settlement terms in this matter," and ordering "the parties to execute the documents in the form that they existed at that time." Green did not file a notice of appeal from that judgment.

Discussion. 1. Timeliness of the appeal. As a preliminary matter, Bresnahan argues that Green's appeal must be dismissed because she failed to file a notice of appeal from the final judgment within thirty days as required by Mass. R. A. P. 4 (a) (1), as appearing in 481 Mass. 1606 (2019). Additionally, Bresnahan asserts that Green's notice of appeal, filed May 31, 2023, could not serve as a proper appeal from the final judgment because it only addressed interlocutory orders. The motion judge denied Bresnahan's motion to dismiss the appeal, concluding that the orders appealed from were "the last acts

5

before judgment should have entered on or shortly after May 22, 2023, and the case dismissed."  The notice of appeal was filed within thirty days of May 22, 2023.  We agree the appeal was timely.  Moreover, although Green did not file a new notice of appeal after judgment formally entered, "no action on the appeal had yet been taken" before the final judgment entered.  Roch v. Mollica, 481 Mass. 164, 165 n.2 (2019).  See Sarkisian v. Concept Restaurants, Inc., 471 Mass. 679, 681 n.3 (2015) (where separate order of judgment in favor of defendant did not enter after allowance of defendant's motion for summary judgment, "[f]inding no prejudice to either of the parties in the premature filing of the notice of appeal, we treat the appeal as if judgment had entered").  In such circumstances, "the concerns underlying [Mass. R. A. P.] 4 (a) are not implicated."  Roch, supra.  See Tocci Bldg. Corp. v. IRIV Partners, LLC, 101 Mass. App. Ct. 133, 136 n.5 (2022), overruled on other grounds by Business Interiors Floor Covering Business Trust v. Graycor Constr. Co., 494 Mass. 216, 228-229 (2024).  Thus, we turn to the merits of the underlying appeal.

2.  The order to enforce the agreements.[2]  "[T]he deliberateness and the gravity" of reporting a settlement

---

[2] The parties dispute the standard of review, with Green arguing that the standard of review is de novo, while Bresnahan argues that it is an abuse of discretion standard.  Green has the better argument.  Although judges "enjoy substantial leeway"

6

agreement to the court "weigh heavily as circumstantial evidence of the intention of a party" to be bound by the agreement. Basis Tech. Corp. v. Amazon.com, Inc., 71 Mass. App. Ct. 29, 44 (2008). Our cases require that an enforceable agreement must contain "(1) terms sufficiently complete and definite, and (2) a present intent of the parties at the time of formation to be bound by those terms." Duff v. McKay, 89 Mass. App. Ct. 538, 543 (2016) (citation omitted). "To ascertain intent, a court considers the words used by the parties, the agreement taken as a whole, and surrounding facts and circumstances." Basis Tech. Corp., supra at 41, quoting Massachusetts Mun. Wholesale Elec. Co. v. Danvers, 411 Mass. 39, 45-46 (1991).

As to the settlement agreement, that standard is met. Indeed, Green raises no dispute as to the terms of the settlement agreement. See Situation Mgt. Sys., Inc. v. Malouf, Inc., 430 Mass. 875, 878 (2000) ("It is not required that all terms of the agreement be precisely specified, and the presence of undefined or unspecified terms will not necessarily preclude

---

in resolving a motion for enforcement of a settlement agreement, an order issued without an evidentiary hearing "should be treated as akin to one for summary judgment." Duff v. McKay, 89 Mass. App. Ct. 538, 542 (2016). Accordingly, we review "de novo, to determine 'whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law.'" Id. at 542-543, quoting Bank of N.Y. v. Bailey, 460 Mass. 327, 331 (2011).

7

the formation of a binding contract").  It is the "present intent" at the moment of the formation of the contested agreement.  Basis Tech. Corp., 71 Mass. App. Ct. at 40.  Because the points in dispute are "'subsidiary matter[s]' that did not alter the essential nature of the bargain, then there was a contract that could be enforced."  Duff, 89 Mass. App. Ct. at 544, quoting McCarthy v. Tobin, 429 Mass. 84, 86 (1999).[3]

The disputes are over four provisions of the license agreement, noted above.  Green's attorney reported to the clerk that the case had settled as of 3:30 P.M. on December 5, 2021. The motion judge determined that the settlement and license agreements as they existed many hours later, at 11:05 P.M. on December 5, 2021, represent the agreed on settlement terms.  Our review of the record leads us to conclude otherwise.  Although the draft license agreement sent at 11:05 P.M. was sent prior to Green's attorney's telephone call to the court on the morning of December 6, 2021, that draft license agreement was sent after both parties had agreed to settle and after Green initially reported to the court via e-mail that they had settled the case. The question is what was agreed to at the time that Green's attorney first called the court on December 5.  See Basis Tech.

---

[3] It follows that where the parties had indeed reached an enforceable agreement with only disputes of fact involving subsidiary terms, the motion judge correctly denied Green's motion to restore the case to the trial list.

8

<u>Corp</u>., 71 Mass. App. Ct. at 41 (original agreement remained independent of additional discussion of terms); <u>Dominick</u> v. <u>Dominick</u>, 18 Mass. App. Ct. 85, 86-89 (1984) (once parties stated to judge that they had reached settlement agreement, heard agreement read to judge, and stated they were satisfied with agreement, agreement became binding even in absence of formal signed agreement).[4]

The fact that Bresnahan may have inserted unilateral terms in her favor that were shared in the draft license at 11:05 <u>P</u>.<u>M</u>. is not relevant and does not bind Green if she had not agreed to them at the time the case was reported settled earlier that day. Either party was free to "angl[e] and prob[e] for incremental benefits or favors" beyond those agreed to by the parties at approximately 3:30 <u>P</u>.<u>M</u>., but neither was bound unless they assented to be bound. <u>Targus Group Int'l, Inc</u>. v. <u>Sherman</u>, 76 Mass. App. Ct. 421, 433-434 (2010) ("the parties' exchanges of final drafts and e-mails during the ensuing three months did not present a genuine issue of material fact of their intentions to be bound at the time of the execution of the [agreement in principle]").

---

[4] Just as a party cannot contradict and undermine a settlement agreement it reached, <u>Correia</u> v. <u>DeSimone</u>, 34 Mass. App. Ct. 601, 604 (1993), one cannot add in unilateral terms after the settlement has been reported to the court, see <u>Basis Tech. Corp</u>., 71 Mass. App. Ct. at 41.

What remains are factual questions over whether the parties had agreed at approximately 3:30 P.M. to the four terms at issue or whether Bresnahan unilaterally inserted new terms on which the parties had not agreed.  Contrast Duff, 89 Mass. App. Ct. at 544.  In resolving indeterminacy, the judge may reference professional norms in the practice area.  Id.  Of course, the judge also can consider that every contract contains an implied covenant of good faith and fair dealing.  Weiler v. PortfolioScope, Inc., 469 Mass. 75, 82 (2014).  Indeed, some if not all of the parties' disputes are resolved by the implied covenant of good faith and fair dealing.  For example, Green is concerned that Bresnahan could record the agreement, which would void it.  Except, as Bresnahan's attorney rightly conceded at oral argument, if Bresnahan did that, she would be in breach of the duty of good faith and fair dealing.  The implied covenant provides "that neither party shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract . . . ."  Anthony's Pier Four, Inc. v. HBC Assocs., 411 Mass. 451, 471-472 (1991), quoting Drucker v. Roland Wm. Jutras Assocs., 370 Mass. 383, 385 (1976).

Accordingly, we remand the matter for a determination of whether there had been agreement on the four contested license agreement terms as of approximately 3:30 P.M. on December 5,

10

2021.  If there are no material disputes of fact as to the record as of 3:30 P.M, then the matter may be treated as a motion for summary judgment.  If there are material disputes of fact, the judge has the authority to conduct an evidentiary hearing to resolve any factual disputes.  "[J]udges enjoy substantial leeway to resolve open issues and to dispose of the matter summarily."  Duff, 89 Mass. App. Ct. at 542.  See Basis Tech. Corp., 71 Mass. App. Ct. at 35 (noting judge reviewed evidence of agreement and made findings).

Conclusion.  The March 16, 2023 order allowing Bresnahan's motion to enforce the settlement agreement, the March 16, 2023 order denying Green's motion for reconsideration, and the May 22, 2023 order denying Green's motion for reconsideration of the order to enforce settlement agreement are vacated and the matter is remanded for further findings consistent with this memorandum and order.  The April 6, 2022 order denying Green's motion to restore the case to the trial list is affirmed.

So ordered.

By the Court (Henry,
Desmond & Englander, JJ.[5]),

*Paul Little*

Clerk

Entered:  December 10, 2025.

---

[5] The panelists are listed in order of seniority.